# Mobile County *v.* Kimball & Slaughter.

*Bill in Equity to compel the County to deliver or account for Bonds, &c.*

1. *Mobile Harbor Board, creditor of; when can not enforce payment of debt from the County of Mobile.* —A creditor of the Harbor Board (created by the Act of February, 1867,) for work done (after the county had delivered to it a number of bonds, and before the act abolishing the board, and requiring it to turn over all property to the commissioners of revenue for the county,) can not maintain a bill in equity against the county, to compel it to deliver up or account for certain of the county bonds, issued to the board, which the county purchased of the board, and canceled before maturity, when it appears that these were the only bonds delivered back to the county, and that there remained a sufficient number of the bonds originally issued, and for which the board had not accounted, to satisfy all claims against the board. Whether after issuing and delivering its bonds to the board, the county, without any fraud or collusion, could purchase the bonds, at fair market rates from the board, is not decided; but upon the facts of this case, it is held that the remedy of the creditor was not against the county, but against the harbor board, or some of its members, or such persons as are unlawfully in possession of, or withholding the bonds.

APPEAL from the Chancery Court of Mobile.
Heard before Hon. ADAM C. FELDER.
The opinion states the facts.

C. W. RAPIER, for appellant.—That the county is liable for the outstanding bonds is admitted; but here its liability in connection with the harbor improvement ceases. The county is by statute a municipal corporation. The county commissioners are a *quasi* political corporation.—Ang. & Ames on Corp., §§ 14, 23. Their ordinary duties and powers are defined by statute. Their relation to the harbor board was special. Their duty in respect to the latter was such only as was imposed by the statute, and did not extend further. By authority and requirements of law two hundred bonds were issued. Before a second requisition by the harbor board, the act of 1867 was virtually repealed. The whole duty of the county commissioners in respect to the harbor improvement was fulfilled, and the right or power on the part of the county commissioners to issue bonds, or to appropri-

ate the funds of the county for the purpose of discharging the indebtedness of the harbor board did not exist. It is a well settled principle, that a corporation has no other powers than such as are specifically granted, and that its general power must be restricted by the nature and object of its institution.—Ang. & Ames on Corp., § 111. The liability of a county can only arise upon statute authority.—*Van Epps v. County Commissioners*, 25 Ala. 406.

BOYLES & OVERALL, *contra.*—The county of Mobile is a *quasi* corporation. All duties imposed upon a corporation by law, and all benefits conferred at its request, raise implied promises for the enforcement of which an action will lie. 3 Mass. 364; 7 Cranch. 299; 8 Wheat. 338; 9 Peters, 541. When the contract was made and the work done, it was known to appellees that the harbor board contracted as agent and not as principal. This being so the appellees must look alone to the principal and can have no remedy against the agent. The name of the principal was disclosed at the time the contract was entered into.—1 Clifford, 519; 26 Wis. 356, and cases there cited; 43 Vt. 25; 66 Penn. St. 340; 63 Penn. St. 77; 12 Wallace, 681. The principal is bound by the acts of a general agent, though such acts may exceed the agent's instructions.—2 Blackf. 469; Story on Agency, 146; 49 N. Y. 259; 36 N. Y. 79; 64 Barber, 142; 23 Iowa, 109; 30 Geo. 158; 8 Kansas, 668; 21 Ohio St. 492.

MANNING, J.—By an act of February 16th, 1867, the general assembly of Alabama provided that a "board for the improvement of the river, harbor and bay of Mobile," commonly called "the harbor board," should be constituted as therein set forth. The persons composing it were not elected by the people of Mobile county, though one of them was the president of its court of county commissioners of revenue. By section two it was further enacted, "That the president and commissioners of revenue of Mobile county are hereby required to issue bonds for the amount of one million of dollars, to be issued and made payable as they may deem proper, to be delivered to the said board for the improvement of the river, harbor and bay of Mobile, whenever they may require them, and said court are required and shall levy and cause to be collected such tax as may be deemed proper to pay such bonds." The act further provided that the harbor board should employ these bonds, or the proceeds of them, in performing the work to be done under its direction and superintendence, of improving the river, harbor and bay of Mobile—by widening and deepening the channel thereof to

the city, or by making an artificial harbor, and should have
the power to "assess the dues on tolls to be collected on
vessels or water-craft," &c.

This board was organized, undertook to perform its work,
and demanded of the president and commissioners of revenue
of Mobile county—the body having, in reference to matters
of revenue, the authority of a "court of county commission-
ers," therein—the bonds of the county to the amount of
$200,000; in accordance with which demand, the said presi-
dent and commissioners of Mobile county, on the first day
of June, 1871, delivered to said board two hundred of the
bonds of Mobile county, each for the sum of $1,000, payable
at a future day, and with coupons for interest attached.
These bonds and coupons were issued, in obedience to a
judgment of the circuit court, which was affirmed upon appeal
by this court, commanding the said president and commis-
sioners, by a writ of *mandamus*, to execute and deliver them.
*Pres't & Commis'rs, &c. v. The State ex rel.*, 45 Ala. 399.

By acts of April 19th, 1873, that of February 16th, 1867,
was repealed—and the harbor board was prohibited from
demanding and was declared not entitled to receive "under
any pretense whatever  *  *  *  *  any greater or larger
sum or amount of bonds of said county than for said two
hundred thousand dollars, including the bonds heretofore
issued," and was required to close up and settle its business,
and then to transfer the maps, charts, reports and other
papers of the board to the judge of probate of Mobile county,
whose duty it was made to carefully keep and preserve them
as a part of the public records of his office.—*St. Martin v.
New Orleans*, 14 La. Ann. 113; 30 Cal. 427.

In the meantime the harbor board, after receiving the two
hundred county bonds, had entered into a contract, in the
year 1872, with appellees for the performance by them of
certain work for the improvement of the river, harbor and
bay of Mobile, and agreed to pay them therefor, at the rate
of $49\frac{1}{2}$ cents per cubic yard, in said bonds, valuing them at
$82\frac{1}{2}$ cents to the dollar, or $825 to the bond of $1,000. The
work was completed, to the satisfaction of the board, by the
first day of June, 1873, before which time appellees had
received sixty-six of said bonds for the sum of $66,000, and
then were entitled to receive seventeen other bonds for the
sum of $17,000 more, with interest from that date. Of these
seventeen bonds, eleven were a short\time afterwards deliv-
ered by the harbor board to the appellees; and the bill in
this cause is filed to obtain the remaining six, or their value,
from Mobile county.

The harbor board was a body created by the general assem-

bly of Alabama, and not an agent appointed by the county of Mobile. Its authority as well as its existence was derived through the statute from the State. It was with this board that the appellees made the contract upon which their suit before the chancellor was founded. And it is not shown or alleged that the amount of bonds it had received was insufficient to enable it to fulfill its engagements. Manifestly, therefore, their controversy should have been with the harbor board and not with the county of Mobile, unless some other state of facts had arisen by which the latter alone became liable to their suit.

Two grounds are alleged by appellees, who were complainants below, on which the responsibility of the county is based.

1st. One of these grounds is, that "the said harbor board have ceased to have any thing whatever to do with the improvement of the river, bay and harbor of Mobile, and " (as charged upon information and belief,) "have turned over to and delivered to the said court of commissioners of revenue of Mobile county all the money, county bonds, &c., of any and every sort or kind whatever left in possession of or under the control of said harbor board unexpended in and about the improvement of said river, harbor and bay of Mobile as aforesaid."

2d. The other ground set up is, that the county, through the commissioners of revenue, had bought from said harbor board, after the claim of said appellees had matured, thirty-one of the same two hundred bonds which had been issued by it to the harbor board for the improvement of the river, harbor and bay as aforesaid, paying therefor at the rate of seventy cents in the dollar, a price alleged to be much less than their market value at the time ; and that appellees demanded of said court of commissioners six of said bonds, the number due to them, which it refused to deliver to them.

Counsel for appellees were mistaken in the facts alleged in the first ground set forth. The harbor board continued to exist for the purpose of winding up and settling its business, and was sued in two actions at law upon claims against it, one of which was brought by appellee James E. Slaughter, and caused suit in its name to be brought against certain other persons for the recovery of twenty-three of the two hundred bonds aforesaid, which its agent had not accounted for ; and none of those bonds, or of any money or effects of the harbor board, had been ever turned over or delivered to said president and commissioners of revenue.

And as to the second ground above : Although said thirty-one bonds were bought at seventy cents in the dollar—by the president and commissioners of revenue for the county—

defendant denied the allegation of complainants (the appel-
lees) that this price was less than their market value at the
time—and complainants did not attempt to maintain their
side of that issue. These bonds had also been canceled by
the commissioners of revenue, before the demand of six of
them was made by appellees of that body. While it is also
further shown on behalf of the county that there still
remained twenty-three others of its two hundred bonds
which the harbor board received, that it had not accounted
for; which twenty-three bonds were much more than suffi-
cient to pay appellees the balance due to them, and all
other debts that it is shown the harbor board owed.

Without, therefore, discussing the question, whether after
the issue of the bonds to the harbor board, the county
authorities had the right to purchase them up before matur-
ity, at their fair market value at the time, and without any
fraud or collusion, it is apparent that the delinquency com-
plained of is that of the harbor board or some of its members
against whom the suit was not brought, and not that of the
county which is sued.

The only obligations imposed on the county and incurred
by it, were that it should issue its bonds upon demand of the
harbor board, and pay them according to their stipulations,
to the lawful holders thereof. If its court of commissioners
of revenue refused on such lawful demand to issue the county
bonds, or if the harbor board, after procuring the work to
be executed, failed to perform or was disabled from perform-
ing its duty of demanding from the county its bonds to a
sufficient amount to pay the contractors, it is probable a
case could be made for the interference of a court and its
coercive operation on the county authorities in favor of the
contractors, in a suit brought by them.

But when the county officials have delivered the bonds to
the whole amount demanded, and this amount is ample for
the fulfillment of the obligations contracted by the harbor
board, and there has been no default on the part of the
county in any particular, we do not perceive how it is to be
made, in a suit like the present, amenable to third parties
for the delinquency of a body which it did not constitute,
and over which it had no control. If appellees have just
grounds of complaint against any one, it is against the harbor
board or some of its members, and perhaps against such
other persons as were, if any persons were unlawfully in
possession of, or withholding the bonds.

The decree against appellant must be reversed, and the
bill be here dismissed at the cost of the appellees in this
court and in the court below.