# Slaughter *v.* Mobile County.

*Bill in Equity to compel the County of Mobile to pay Judgment obtained for Services rendered under the Act establishing the Board for the Improvement of the River, Harbor and Bay of Mobile.*

1. *Act establishing the "Board for the Improvement of the River, Harbor and Bay of Mobile," constitutional.*—On the 16th February, 1867, an act was approved, establishing the "Board for the Improvement of the River, Harbor and Bay of Mobile" (Pamph. Acts, 1867, p. 507), requiring the President and Commissioners of Revenue of Mobile County to issue bonds of the county to the amount of one million of dollars, to be delivered to the said board, for the improvement of the river, harbor and bay of Mobile, whenever the board required them, and requiring said president and commissioners to levy and cause to be collected such taxes as may be deemed proper to pay such bonds, empowering said board to receive the bonds and apply them or their proceeds to the improvement of said river, bay and harbor, such improvement to be made in such manner as the board may direct, and authorizing them to make any rules and regulations, and to assess dues or tolls, to be collected on vessels or water crafts, and to do any act they might deem proper "to effect the objects of this act." *Held,* that it must be presumed that the act was passed and approved by and with the consent of the tax-payers of Mobile county, made known through their representatives, and it was a valid and constitutional enactment.

2. *Same; contracts made by the board binding on the county.*—Under said act, the "Board for the Improvement of the River, Bay and Harbor of

[Slaughter v. Mobile County.]

Mobile " were created a body corporate, and, as such, made trustees to carry into effect the purposes of the act, their duty and responsibility being official and fiduciary, extending only to the fund they could command and coerce; and contracts made by the board, for the purposes contemplated by, and within the scope and limitations of the act, were valid and binding on the county of Mobile, imposing on it a liability for their payment.

3. *Same; obligation of contract made by the board beyond legislative power to impair.*—The legislature has no more power to impair the obligation of a contract made pursuant to its authority than it has to impair the obligation of a contract made between individuals under like conditions; and hence, work having been done and accepted under a valid and binding contract made with said board, it was placed beyond legislative power to impair its obligation.

4. *Same; liability of the county of Mobile for work done in pursuance of its provisions.*—In 1871, work was performed by a contractor under a contract made by him with the Board for the Improvement of the River, Bay and Harbor of Mobile," to an amount, and for the purposes authorized by the act creating the board. On the 19th April, 1873, an act of the General Assembly was approved, prohibiting the issue of bonds of the county of Mobile to said board under the act of 1867, exceeding the sum of two hundred thousand dollars. Bonds to this amount having been issued to said board, and by them expended for other improvements made under contracts with them, leaving nothing with which to pay said contractor, he brought suit, and, in 1881, recovered a judgment against said board, and caused an execution to be issued thereon, which was returned "no property found;" and thereupon he filed a bill against the county of Mobile to compel payment of his judgment. *Held*, that the county was liable, and that the contractor could proceed directly against it for the enforcement of such liability. (The case of *Mobile County v. Kimball*, 54 Ala. 56, distinguished from this.)

5. *Same; when claim for work done under its provisions barred by the statute of limitations.*—In such case, the contractor's cause of action against the county of Mobile accrued at the time when said board had expended the two hundred thousand dollars in the improvements authorized by the statute, and its assertion by him in no way depended on the previous prosecution of the board to insolvency; and more than six years having elapsed between the accrual of the right of action and the bringing of suit, his claim is barred by the statute of limitations.

APPEAL from Mobile Chancery Court.
Heard before Hon. JNO. A. FOSTER.

The facts are sufficiently stated in the opinion.

HANNIS TAYLOR, for appellant.

WM. JONES, *contra.*

STONE, J.—The present case went off by final decree of dismissal in the court below, on demurrer, plea of the statute of limitations, and motion to dismiss for want of equity. The bill alleges that under the act for the purpose, approved February 16, 1867—Pamph. Acts, 507—the complainant, Slaughter, with others, his then partners, in the month of June, 1871,

entered into a contract with the "Board for the Improvement of the River, Harbor and Bay of Mobile," to do certain work in the improvement of said river and harbor. The bill sets forth the work agreed to be done, the stipulated price per cubic yard, the manner of payment, and that the work was completed in October, 1871. The agreed terms were, that the contractors were to be paid in bonds of the county of Mobile, to be issued pursuant to said act, at the rate and price of eighty-two and a half cents in the dollar. The work being completed, the contractors presented their claim to the board for something over seven thousand dollars. It has never been paid. The act under which the contract was made required the president and commissioners of revenue of Mobile county "to issue bonds [of the county] for the amount of one million of dollars, . . to be delivered to the said board, for the improvement of the river, harbor and bay of Mobile, whenever they may require them, and said court are required, and shall levy and cause to be collected, such tax as may be deemed proper to pay such bonds;" said act then empowered said board to receive the bonds and apply the same or their proceeds to the improvement of said river, bay and harbor—such improvements to be "made in such manner as the board may direct, and for that purpose they may make any rules and regulations, and assess the dues or tolls to be collected on vessels or water crafts, and do any act they may deem proper to effect the objects of this act."

On April 19, 1873—Pamph. Acts, 258—the act was approved which declared, "that there shall not be issued by the president and commissioners of revenue of Mobile, to the board named in the caption of this act, [Board for the Improvement of the River, Harbor and Bay of Mobile], the bonds of the county of Mobile in the aggregate for a larger amount than the sum of two hundred thousand dollars, and said Board for the Improvement of the River, Harbor and Bay of Mobile shall not be entitled to receive under any pretense whatever from said president and commissioners of revenue of Mobile county any greater or larger sum or amount of bonds of said county, than for said two hundred thousand dollars, including the bonds heretofore issued on the requisition of said board."

The bill avers that Slaughter, complainant in this suit, purchased from his copartners their interests in said claim, and that he thereby became the sole owner thereof. It then avers that in April, 1874, he instituted a suit at law against the said "Board for the Improvement of the River, Harbor and Bay of Mobile," to recover for the work so done under said contract, and that on June 21, 1881, plaintiff recovered a verdict

[Slaughter v. Mobile County.]

and judgment in said suit for $5353.33. Execution was issued on said judgment, and in December, 1881, it was returned "no property found." The present bill was filed in March, 1882, and seeks to compel the county of Mobile to pay the judgment.

While the act "to provide for the improvement of the river, bay and harbor of Mobile" is not in itself a contract, it is nevertheless an authority to make contracts, one or more, to the extent of one million of dollars. The question arises, what is the nature of the act, and what the effect of its repeal. Its purpose, as is plainly expressed, was to improve the river, bay and harbor of Mobile, at the expense of Mobile county. This, we must presume, was with the consent, and at the request of the tax-payers of the constituent body, made known through their representatives.—Cooley's Cons. Lim. marg. p. 103 ; *Chappell v. Williamson*, 49 Ala. 153 ; *Tindal v. Drake*, 60 Ala. 170. The labor and responsibility of having the improvements made were chiefly imposed on the improvement board. It was for that body to determine the character and extent of the improvements, make contracts for the labor, receive and dispose of the bonds of the county, and, out of the proceeds, pay for the labor when performed, to the extent of the million dollars in the bonds authorized to be issued, or their proceeds. They were created a body corporate, and, as such, made a trustee to carry into effect the purposes of the act. Their functions were public and *quasi* municipal, and when performed within the scope of their statutory power, and in good faith, no personal liability attached to the members of the board. Their duty and responsibility were official and fiduciary, and extended only to the fund they could command and coerce under the terms of the statute. The statute authorized them to make valid and binding contracts to the extent of one million in county bonds, which it authorized to be issued. That statute was constitutional.—*County of Mobile v. Kimball*, 102 U. S. 691 ; s. c. 54 Ala. 56. The revenue board of Mobile, called at that time "the president and commissioners of revenue of Mobile county," had, under the statute, but a single duty to perform. They were "required to issue bonds for the amount of one million of dollars, . . . whenever they [the improvement board] may require them, and said court are required and shall levy and cause to be collected such tax as may be deemed proper, to pay such bonds." This duty was mandatory on the court of revenue, whenever the improvement board required its performance. Such were the powers and duties of the two boards respectively, so long as the act of 1867 remained of force. It will be readily observed that, under this statute, all the power and option of making contracts which should bind Mobile county, within the million in

[Slaughter v. Mobile County.]

bonds, was vested in the Board for the Improvement of the River, Bay and Harbor of Mobile, while the revenue court was required, and only authorized to furnish the evidence of the county's liability, by the issue of bonds.

Long before the repeal of the act of 1867, the contract was entered into, which is the foundation of the present suit. At that time, much the larger part of the million in bonds remained unconsumed, and uncalled for by the improvement board. As we understand the pleadings and facts in this case, it is not claimed that contracts were ever made, approximating the million dollars which the statute authorized. It follows, then, that the improvement board were authorized to enter into the contract which is the foundation of this suit, and that when made, it became binding on Mobile county and its revenue court. And, when the work was done and accepted under the contract, if not sooner, it was placed beyond the power of the legislature to impair its obligation. State legislatures have no more power to impair the obligation of contracts made pursuant to their authority, than they have to impair those of individuals, made under like conditions.—*Fletcher v. Peck*, 6 Cr. 133; Cooley's Cons. Lim. m. p. 273 *et seq*. There can be no question that, under the averments of complainant's bill, he was entitled to be paid for the work he performed under the alleged contract, and that the repealing statute of 1873, while it may have changed the nature of his remedy, did not and could not take away his right.

It is made a question in this case, whether Mobile county can be made liable for the demand asserted in this bill, and if so, whether such liability can be enforced, until the remedy against the improvement board is exhausted. The case of *Mobile County v. Kimball*, 54 Ala. 56, was a bill filed, in the first instance, against the county, on a contract similar to the one on which this suit is founded. It was decided that the suit could not be maintained, but that the remedy, if any, was against the improvement board, to reach the funds in their hands. This court, after stating that the complainants had made their contract with the harbor board, or board of improvement, said, among other things, that "it is not shown or alleged that the amount of bonds it had received was insufficient to enable it to fulfill its engagements. . . It is also shown on behalf of the county that there still remained twenty-three others of the two hundred bonds which the harbor board received, that it had not accounted for; which twenty-three bonds were much more than sufficient to pay appellees the balance due to them, and all other debts that it is shown the harbor board owed." This court added, however, that "if the court of commissioners of revenue refused on

[Slaughter v. Mobile County.]

lawful demand to issue the county bonds, or if the harbor board, after procuring the work to be executed, failed to perform, or was disabled from performing its duty of demanding from the county its bonds to a sufficient amount to pay the contractors, it is probable a case could be made for the interference of a court, and its coercive operation on the county authorities in favor of the contractors, in a suit brought by them." This case does not hold that no suit can be brought against the county. It does hold that while there remained in the hands of the harbor board funds derived from the bonds furnished by the county, the harbor board was the party liable to be sued, and the county could not be. To hold otherwise, would have left the county liable to be twice mulcted for one and the same improvement. There is a strong intimation that if the county would not or could not furnish to the harbor board the bonds with which to pay the liabilities rightfully incurred in and about the harbor improvements, then the courts would render proper relief against the county. The form of relief is not intimated.

If the act of 1867 had not been repealed, possibly *mandamus* would have been the proper remedy, to compel the revenue court to issue the bonds, and turn them over to the harbor board. But the act approved April 19th, 1873—Pamph. Acts, 258—repealed, in part, the act of 1867, and forbade the issue of any and all bonds above the aggregate sum of two hundred thousand dollars. This sum had already been issued. It thenceforward became impossible for the revenue court to issue other bonds under the act of 1867. The power had been taken away. The present bill alleges that the two hundred thousand dollars had been exhausted in paying for other improvements made under said act, and that there remains in the hands of the harbor board nothing with which to pay the present liability. There is a marked difference between this case, as made by the bill, and the case of *Mobile County v. Kimball*, 54 Ala. 56. We do not doubt that when the authority to issue bonds was taken from the revenue court by the act of 1873, leaving in the hands of the harbor board insufficient means to discharge liabilities rightly incurred under the act of 1867, a liability was thereby fastened on the county of Mobile to make good the deficiency. The authority to bind, conferred by the act of 1867, had been acted on, and had become a contract, and under it work and labor had been done. The legislature had no power to impair its obligation. The county must bear the burden, because it was the county's contract. This results from the presumption we must indulge, that these several statutes, local in their direct operation, were enacted at the instance and request

[Bean, Adm'r, v. Chapman.]

of Mobile county.—*County of Mobile v. Kimball*, 102 U. S. 691.

There is a remaining question. When did the right to sue Mobile county accrue? It is averred in this bill "that after the passage of said act, on the said 19th of April [1873], the said harbor board ceased to have any further work done for the improvement of said river, harbor and bay of Mobile. . . . That the said harbor board did pay out, expend and exhaust the the said two hundred thousand dollars of bonds delivered to it by the county of Mobile, either by the payment of the bonds themselves, or their proceeds, to the several persons to whom the said board was indebted for work done in the improvement of said river, harbor and bay of Mobile; and these facts have been expressly adjudicated by this Hon. Court in a certain cause between the county of Mobile and said harbor board *et al.*, finally determined by the decree of this court on July 14th, 1875." This is a clear, direct, unequivocal averment, not only that the harbor board had expended the two hundred thousand dollars in the improvements the statute authorized, but that the expenditure had taken place before July 14th, 1875; for on that day, the chancery court, in a suit between the county and the harbor board, decreed such to be the case. We hold that at that time, if not earlier, the complainant, Slaughter, had a right of action against the county of Mobile, and that its assertion was in no way dependent on the previous prosecution of the harbor board to insolvency. There is no resemblance between this case, and that of an indorsed, non-commercial note. It may, with more aptness, be assimilated to protested commercial paper. The liability of each is original and primary, so far as the right to recover is concerned. More than six years elapsed between the accrual of the right of action and the bringing of the suit, and no excuse is offered which can excuse the delay. The statute of limitations of six years is a bar to this suit.

Affirmed.