# Keene v. Jefferson County et al.

*Bill to declare Acts of the Legislature Unconstitutional and Void and to enjoin Proceedings thereunder.*

1. *Constitutional law; limitation as to rights of counties to contract debts.*—The power of the legislature to authorize the counties of the State to contract debts for the promotion of public enterprises, not violative of the constitutional restriction as to life, liberty and property, is not restricted by the constitution of 1875, further than is provided by Article XI, § 5, which prohibits any county of the State to levy a larger rate of taxation in any one year upon the value of the taxable property therein than one-half of one per cent., except for the purpose of paying past debts and for public buildings and bridges.

2. *Constitutional law; validity of act making Jefferson county a sanitary district.*—The act of the General Assembly, approved February 28, 1901, "to make Jefferson county a sanitary district and to establish a sanitary commission therefor," etc., (Acts of 1900-1901, p. 1702), and the act approved the same day authorizing the board of revenue of Jefferson county to is-

[Keene v. Jefferson County *et al.*]

sue bonds of said county for the purpose of providing means by which .the provisions of the first act could be carried into effect, are not unconstitutional and void upon the ground that they increase the rate of taxation of the county beyond .he constitutional limit; nor will such acts be construed to be enacted for the benefit of a portion of the county and its citizens to the exclusion of other portions, while the tax is made generally upon all the county; it being presumed that sai acts were passed with the consent and at the request of the tax-payers of said county made known through their represe.1tatives.

3. *Constitutional law; when notice required for local acts will be presumed to have been given.*—In the absence of something appearing to the contrary in the journals of the General Assembly, it will be presumed that the proper evidence of notice required by the constitution (Const. of 1875, Art. IV, § 24), was exhibited and prove. to the General Assembly before a special or local law was enacted; and where the Journal of the House in which the local or special bill originated is silent as to the notice of such bill being given, it will be presumed that such notice was given as required by the constitution.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. J. C. CARMICHAEL.

The bill in this case was filed by the appellant, Madeline Keene, as a resident citizen and tax-payer of Jefferson county, against Jefferson county and the Jefferson County Sanitary Commission. It was averred in the bill that at the session of the General Assembly of Alabama of 1900-1901, there was an act passed making Jefferson county a sanitary district and establishing a sanitary commission therefor; that the commission so created was called the Jefferson County Sanitary Commission, which was composed of eleven members, resident citizens of Jefferson county; that it was provided in said act that said commission should act for Jefferson county, and that all contracts made by said commissioners should be made in the name of Jefferson county, and that all transactions of said commission should be in the name of Jefferson county; that the object and purpose of the enactment of said law and the organization

of said commission was to procure the construction, at
the expense of the taxpayers of Jefferson county, of a
sanitary sewerage system, "extending from a point at
or near the town of East Lake to a point below the town
of Ensley in said county, and also a main or trunk line
of sanitary sewer at or near the city of Birmingham to
a point below the city of Bessemer in said county," and
also to procure the maintenance of said sewers at the
expense of Jefferson county; that under said act the
commission was given all the powers and rights neces-
sary to carry into effect the purposes thereof, and it was
provided therein for the construction of sanitary drain-
age of the thickly populated portion of Jefferson county,
and of the various towns situated therein. It was then
averred in the bill that at the same session of the Gen-
eral Assembly of Alabama there was passed an act to
authorize and require the board of revenue of
Jefferson county to issue negotiable bonds of
said county to the amount of not exceeding $500,000,
for the purpose of providing sanitation in said
county, and to require said board of revenue to
levy and set aside a county tax of 1-20 of 1 per cent, to
provide for the payment of interest on said bonds, and
provide a sinking fund for said bonds and for main-
taining a sanitary system and protecting water supplies;
that this act was approved on February 28, 1901. The
further provisions of these two acts are sufficiently stated
in the opinion.

It was further averred in the bill that in pursuance
of the authority given by said acts, the sanitary com-
mission had proceeded towards the construction of a
sanitary sewerage in the portion of Jefferson county
designated in said special acts, and that the board of
revenue of said county were providing for the issuance
of the bonds as required under said acts. It was then
averred that the said act of the General Assembly creat-
ing said commission and the act authorizing the issu-
ance of the bonds were both local and special laws, and
that no notice of the intention to apply to the General
Assembly for passage thereof was published in Jeffer-
son county, as required by the constitution. It was

[Keene v. Jefferson County *et al.*]

further averred that the county of Jefferson, as a political and civil division of the State, has no authority to build said sewerage, because the building thereof is not a county or govermental undertaking, and that it is proposed in the construction of the sewerage to build it in a limited portion of the county, while the burden of its construction rests upon all the citizens of the county. It was further avered that the imposition of a tax of 1-20 of 1 per cent. was unconstitutional and void.

The prayer of the bill was that the county of Jefferson and the Jefferson County Sanitary Commission be forever enjoined from issuing, selling, or delivering the bonds authorized under said act, and that said acts be declared unconstitutional, null and void. There was also a prayer for general relief.

The respondents answered the bill, admitting the general averments of the bill, but denying that said bill was for the exclusive benefit of a certain portion of the county, or that it was increasing the tax rate authorized under the constitution, and denying, further, that said bill was unconstitutional and void. It was averred in said answer that the purpose and object of the enactment of said law was to preserve the public health of the citizens of Jefferson county, and that the sewerage proposed to be constructed would be built through the most populous portion of said county, and that the drainage caused thereby would result in benefit to all the citizens of said county, and that the carrying out of the purpose of said acts as provided for therein would result to the general good of all the citizens.

It was agreed that the facts stated in the bill, in so far as admitted in the answer and the facts set up in the answer, were true and should be considered as proven in the trial of said cause.

The cause was submitted for final decree upon the bill and answer and upon the written agreement of counsel, and the chancellor decreed that the complainant was not entitled to the relief prayed for and ordered the bill dismissed. From this decree the complainant appeals, and assigns the rendition thereof as error.

WEAKLEY & WEAKLEY, for appellant.—The act of the General Assembly of Alabama creating the Jefferson County Sanitary Commission, and the act authorizing the issue of bonds by Jefferson county for the purpose of building a sewer, are unconstitutional for the reason that no notice of the intention to apply to the General Assembly for the passage of such acts was published in Jefferson county for twenty days prior to the introduction of said bills.—Constitution of Alabama (1875), Art. IV, § 24. The county of Jefferson by issuing its bonds, lending its credit and granting public money to the Jefferson County Sanitary Commission, is violating section 55, article IV of the constitution of Alabama (1875).

A county has no authority to build a sewer.—*Garland v. Board of Revenue,* 87 Ala. 227.

A county has no authority to tax except for a public purpose; that is, a purpose beneficial to and enjoyed by all the public. The building of the proposed sewer is not such an enterprise as will be beneficial to all the people of the county, and yet it is proposed to tax all property and people in the county to pay for it.—*Garland v. Board of Revenue,* 87 Ala. 227, citing *Loan Asso. v. Topeka,* 20 Wall. 655.

The act of the legislature authorizing the issue of bonds, likewise authorizes a tax of 1-20 of 1 per cent. to pay the interest on said bonds, and, remotely, to pay the principal. It is clearly evident that the tax will not be sufficient to pay the principal or any considerable part of it. Unless authority exists to pay the principal out of the general funds of the county, raised by taxation, the county will be unable to pay the bonds and will default. The county officials propose to issue the general obligations of the county. This will imply that the county has authority, within constitutional limits, of levying a tax to pay the principal of the bonds, in addition to the levy authorized by the act. When authority is given to issue bonds, unless the contrary appears by the act authorizing the issue, the power to levy a tax to pay the bonds is implied.—*Loan Asso. v. Topeka,* 20 Wall.

655; Simonton on Municipal Bonds, § 133, and authorities cited.

E. J. SMYER, J. M. GILLESPIE and JAMES WEATHERLY, for appellant.—The acts in question are not in aid of any individual association or corporation.—*Chambers v. Lee County*, 55 Ala. 536; *Marengo County v. Coleman*, 55 Ala. 605; *Ex parte Railroad Co.*, 45 Ala. 725.

The constitution of 1875 was adopted, and the only inhibition in the constitution as to the power of the legislature in regard to counties was to prevent the legislature from authorizing the county to give aid to any individual, association or corporation, or to become a stockholder in any such corporation, association or company; thus leaving the legislature free to authorize the county to do any act not expressly prohibited by this section of the constitution; that is, acts such as the legislature might deem to be for the interest of the county or in aid of the general welfare.—*Mobile County v. Kimble*, 54 Ala. 56; s. c. 102 U. S. 691; *Slaughter v. Mobile County*, 73 Ala. 134.

This court has held that the acts authorizing a county to levy taxes for the public schools of a county is constitutional, and under like process of reasoning the acts under consideration are constitutional; they being for the general good of the county.—*Lee v. Lyde*, 111 Ala. 126; *A. G. S. R. R. Co. v. Read*, 124 Ala. 253; *Francis v. Railway Co.*, 124 Ala. 544; *Railway Co. v. St. Clair County*, 124 Ala. 491.

The act establishing the sanitary commission extends to the entire county for the protection of water courses throughout the entire county from pollution and in other ways. It was intended to meet not only a present need, but to fulfill all the requirements of the future, not only of cities, but all thickly populated communities.—Act, 1900-1901, p. 1705, §7; *Clark v. Jack*, 60 Ala. 278; *Slaughter v. Mobile*, 73 Ala. 137; *McKenzie v. Gorman*, 68 Ala. 442; *Stein v. Mobile*, 24 Ala. 591; Cooley on Const. Lim (6th ed.), 153, 630-1; Tiedeman on Lim. Police Power, 474, 475, 381, 382; Simonton

on Municipal Bonds, §§ 35, 36; *Railrod Co. v. Commissioners*, 63 Ohio St. 27; Cooley on Taxation (2d ed.), 103-105, 108; *Winter v. Montgomery*, 65 Ala. 413.

Neither of the laws are special or local laws within the meaning of the constitution, which requires notice to be published twenty days before the introduction of the bill.—*Clark v. Jack*, 60 Ala. 279. But even if they were such local laws as required notice, the law presumes that the requisite notice was given, unless the journals affirmatively show that notice was not given; and in regard to the laws in question the journals do not show affirmatively that notice was not given. *Clark v. Jack*, 60 Ala. 271; *Walker v. Griffith*, 60 Ala. 361; *Hall v. Steele*, 82 Ala. 562; *Jenning v. Russell*, 92 Ala. 603; *Holt v. Mayor*, 111 Ala. 369.

HARALSON, J.—1. Before the adoption of the constitution of 1875, the legislature had the power to authorize a county to contract debts, in the promotion of railroad and other enterprises of a public beneficial nature, not violative of the constitutional restrictions in behalf of life, liberty and property, and to authorize the levy of taxes for their payment. "The power, then, in the legislature, to authorize the counties of the State to make contracts, to own property and incur obligations, is" (as was said in *Ex parte Selma & Gulf R. R. Co.*, 45 Ala. 727), "without limit, save such as policy and discretion may demand."—*Marengo County v. Coleman*, 55 Ala. 605; *Chambers County v. Lee County*, 55 Ala. 537; *Mobile County v. Kimble*, 54 Ala. 36; *Slaughter v. Mobile County*, 73 Ala. 134.

2. Under the constitution of the State preceding that of 1875, under which these adjudications were made, the legislature had unlimited power over the subject, the unhappy consequences of which are well known. Much litigation ensued; taxes to an oppressive extent were levied; bondholders instituted legal proceedings to compel the levy of taxes, and the confiscation of the property of the people was threatened. In the constitution of 1875 its framers incorporated a provision to limit the power of the State to levy taxes be-

yond a prescribed rate, the object of which was to prevent the recurrence of such evils. In Art. XI, § 5, it was provided, that "No county in this State shall be authorized to levy a larger rate of taxation, in any one year, on the value of the taxable property therein, than one half of one *per centum,*" with provisos for an additional rate to pay debts existing at the date of the ratification of the constitution, or that might thereafter "be created for the erection of necessary public buildings or bridges;" and for such debts and for buildings or bridges, the counties were authorized to "levy and collect such special taxes as may have been, or might thereafter be authorized by law." Under this limitation of power, no county could levy in any one year a larger rate of taxation on the value of the property therein, than one-half of one *per centum,* except to pay past debts and for public buildings and bridges. A county could not levy a special tax for any purpose other than those expressed in these provisions, if such special tax, together with the tax for general purposes, exceeds one-half of one *per centum.—Garland v. Board of R. of Montgomery County;* 87 Ala. 223, 227; *Hare v. Kennerly,* 83 Ala. 608. This power of the legislature, however, to authorize the counties of the State to contract debts for promotion of public enterprises not violative of the constitutional restrictions on behalf of life, liberty and property, was not restricted further than was provided in said section 5, Art. XI, of the constitution, and except as thus limited, its power remained the same, as before the adoption of that constitution. Those limitations as to the authority of the legislature to authorize the levy of taxes by a county for any purpose, were thereafter mandatory, and to that exent, it was shorn of power.

3. The legislature, on February 28, 1901, (Acts of 1900-1901, p. 1702), passed an act,—to quote its title,— "To make Jefferson county a sanitary district, to establish a sanitary commission therefor, make the commission a body corporate, prescribe its powers and duties, and to regulate and provide for sanitation in said

county." By another act approved the same day, the board of revenue of the county were authorized to issue negotiable bonds of said county to an amount not to exceed $500,000 for the purposes of sanitation in said county, and to require said board to levy and set aside a county tax of one-twentieth of one per centum, in order to provide for the payment of interest on said bonds; to provide a sinking fund for the redemption of the same, and for maintaining a sanitary system and protecting water supplies. (Acts of 1900-1901, p. 1722.) The last act was passed, evidently, in aid of the first, and to provide the means by which the first could be carried into effect. Indeed, it makes plain reference to the latter enactment, especially in sections from 30 to 34, each, inclusive. The first act makes no provision for levying a tax, or for raising the funds for the construction of the sanitary sewer system therein provided, and without the last act, it is difficult to see the source from which the necessary funds could come. Section 11 of the last act providing for the levy of said special tax of one-twentieth of one per cent for the purposes specified, contains the provision, "that no levy shall be made by said board of revenue in any one year, exceeding one-half of one per cent for the ordinary county purposes, but not including necessary public buildings and bridges," and this provision is set out in the bill. Here was a limitation on the power of the board, not to exceed one-half of one per cent. for general county purposes, including the one-twentieth of one per cent. for sanitary purposes, and this brings the levy clearly within constitutional restrictions.—*Francis v. Railway Co.,* 124 Ala. 544; *Railway Co. v. St. Clair County,* 124 Ala. 491; *A. G. S. R. R. Co. v. Reed,* 124 Ala. 253.

It is said, however, by the complainant, that the first act purports to be for Jefferson county, and is not such an enterprise as will be beneficial to all the people of the county, while it is proposed to pay for it out of the funds raised by taxation on the property of all the people, or, in other words, that the sewer system and the benefits to be derived from it, when and if constructed, are local, confined to a part only of the people of the

county, while all are taxed to build and maintain it. The acts, if that were important, are not fairly subject to such objection. It is shown that about two-thirds of the population of Jefferson county, of more than 100,000 people, live in the two valleys and at the foothills, through which the trunk lines of the sewers are proposed to be run, and that three-fourths in value of all the property in the county is within the area of drainage covered by these two trunk lines of sewer. The system in its beneficial effects, extends to the entire county for the protection of its water courses from pollution, and was intended to meet not only the present needs, but to fulfill in the future, the requirements of sanitation and health in cities and towns, and in all the thickly settled portions of the county. The health of the valleys drained is of great importance to every citizen of the county, in preventing the spread of contagious and infectious diseases throughout its borders. The prevention of diseases is oftener better and cheaper than to cure them when they come.

In *Slaughter v. Mobile County*, 73 Ala. 137, in construing the act for the improvements of the river, bay and harbor of Mobile, at the expense of the county, the court said, that while the act "is not in itself a contract, it is nevertheless an authority to make contracts, one or more, to the exent of one million of dollars. The question arises, what is the nature of the act, and what the effect of its repeal. Its purpose, as is plainly expressed, was to improve the river, bay and harbor of Mobile, at the expense of Mobile county. This, we must presume, was with the consent, and at the request of the taxpayers of the constitutional body, made known through their representatives." The same intendments will be indulged in reference to the sewer system proposed by these acts—that it is a health system in which all the people of the county are more or less interested. It is no more local than a county road or bridge to open, build or improve which, the inhabitants of Birmingham or Mobile, remote from the improvements, are taxed the same as those who live in their immediate localities,

and who are most benefitted. If it were conceded that these sewer improvements are to be more beneficial to a part of the people of Jefferson county, than to those of other parts of said county, we are not to be understood as holding that said acts of the legislature would, on that account, be rendered invalid.

5. Again it is urged that the two acts are unconstitutional for the reason that—as claimed—these laws were local and special, and no notice of the intention to apply to the legislature for their passage was published in Jefferson county for twenty days prior to the introduction of the bills.—Constitution of 1875, Art. IV, § 24. It was long ago held that this court will indulge the intendment that the legislature conformed to every constitutional requirement, which the journal of its proceedings does not affirmatively show was disregarded, and that we must uphold a legislative enactment until its unconstitutionality is clearly shown. *Harrison v. Goody*, 57 Ala. 49; *Clarke v. Jack*, 60 Ala. 271. The printed journals of the house of representatives, where the bills originated, are silent as to notices as to these bills. We will, therefore, presume they were given, as the law required.

Affirmed.