### *BRYAN* v. *VIRGINIA.*
### *COOPER* v. *VIRGINIA.*
### *McGAHEY* v. *VIRGINIA.*

The head-note for these cases will be found on page 663, *ante.*

Mr. Justice Bradley continued, stating the case made in these three causes as follows:

With regard to three of these cases, *Bryan* v. *The State of Virginia, Cooper* v. *The State of Virginia,* and *McGahey* v.

*The State of Virginia,* we have very little hesitation or diffi-culty in coming to a conclusion. They are suits brought by the Commonwealth of Virginia against the persons severally named, under the act of May 12, 1887, for the recovery of taxes due from them respectively. The proceedings in the last-named case may be described as a sample of them all. The case was instituted in the Circuit Court of Alexandria, Virginia, in the name of the Commonwealth, by the following notice:

" To John McGahey:

" Take notice that on the 23d day of March, 1888, in accord-ance with the statutes in such cases made and provided, I shall move the Circuit Court of Alexandria City for a judg-ment against you in favor of the Commonwealth of Virginia for the sum of $12.60, with interest on $6.40, part thereof, from the 15th day of December, 1886, till paid, and on $6.20, the residue, from December 15, 1887, till paid, that being the sum due by you to the said Commonwealth of Virginia for taxes, together with the penalty thereon, in payment of which papers or instruments purporting to be coupons detached from bonds of the State of Virginia have been tendered and not accepted as payment, and which taxes have not been otherwise paid due on certain real and personal property in the city of Alexandria, the said taxes being the same assessed according to law by the Commonwealth of Virginia for the years 1886 and 1887, upon the property aforesaid.

" LEONARD MARBURY.

" *For the Commonwealth of Virginia.*"

To this notice the defendant filed the following plea:

" For a plea in this behalf the defendant says that the plaintiff ought not to maintain its action, because he says that heretofore, viz., on the 1st day of December, 1886, and on the 1st day of December, 1887, when the taxes sued for became respectively due and payable, and prior to the com-mencement of this action in said city, he was willing and

ready to pay and then and there tendered and offered to pay to the plaintiff tax-receivable coupons, then due and payable, cut from bonds issued by the plaintiff under the act of the General Assembly of Virginia, approved March 30th, 1871, entitled 'An act to provide for the funding and payment of the public debt,' together with lawful money of the United States, as follows, viz.: For the said tax of $6.40, one (1) coupon, No. 23, cut from bond No. 5684, due January 1, 1883, for $3; one (1) coupon, No. 23, cut from bond No. 4213, due January 1, 1883, for $3; and forty cents (40c.) lawful money of the United States.

"And for the said tax of $6.20, one (1) coupon, No. 29, cut from bond No. 1048, due January 1, 1886, for $3; one (1) coupon, No. 28, cut from bond No. 2899, for $3, due July 1, 1885; and twenty cents (20c.) lawful money of the United States; to receive which the plaintiff then and there refused.

"And the defendant further says that always from the times when the said taxes became respectively due and payable, hitherto he has been ready and willing to pay and is still here ready and willing to pay to the plaintiff the said tax-receivable coupons and lawful money, and he now brings into court here said coupons and lawful money, ready to be paid to the plaintiff if it will accept the same; and this he is ready to verify; whereupon he prays judgment, etc."

Upon the issue thus joined a trial by jury was had and a verdict given for the Commonwealth for $13.96, and judgment entered thereon with costs. A bill of exceptions was taken at the trial, which shows that the defendant first moved to quash the notice of motion and dismiss the cause on the ground that the act of May 12, 1887, entitled "An act to provide for the recovery by motions of taxes and certain debts due the Commonwealth," etc., is repugnant to section 10, article 1 of the Constitution of the United States; which motion was overruled. The defendant, then, to maintain the issue on his part, proved that when said taxes became respectively due and payable he tendered in payment thereof to the proper collecting officer the coupons and lawful money described in and filed with his plea, which coupons on their face purported to have

been originally attached to bonds issued by the State of Virginia under the act of March 30, 1871, being then respectively due and payable, and having each upon its face the following language: "Receivable at and after maturity in payment for all taxes, debts and demands due the State," which said coupons and money the said officer refused to receive. The said coupons were then offered in evidence, and are in the form following, printed wholly from an engraved plate: "Receivable at and after maturity for all taxes, debts and demands due the State. The Commonwealth of Virginia will pay the bearer three dollars, interest due 1st January, 1883, on bond No. 4213. *George Rye*, Treasurer of the Commonwealth of Virginia." The other coupons offered were of similar form in all respects. The defendant further proved that he never owned the bonds from which the coupons were cut, and knew nothing whatever in respect to their ownership; that the coupons when purchased by him were already detached from the bonds; and that he bought them in open market as genuine coupons, and without any reason to doubt their genuineness. He further proved that prior to September 1, 1879, the State had issued bonds of the kind and in the form authorized by said act to the amount of many millions of dollars, the coupons thereon being wholly printed from engraved plates and not signed manually. He further offered to prove the denominations and numbers of the bonds issued under the act of March 30, 1871, and the act of March 28, 1879. He offered and read in evidence to the jury senate document XV, senate journal 1881–82, which contained a report of H. H. Dixon, second auditor of the Commonwealth of Virginia, directed to the president of the senate, in answer to certain questions which had been proposed to him by the senate for its information, in which report, amongst other things, the said second auditor stated: "I have the honor to report that I have no knowledge of any spurious or forged bonds or coupons issued or purporting to have been issued under either of the said acts. As to any bonds or coupons that may have been stolen I have heard of none issued under the act of March 28, 1879; nor have I any knowledge of any issued under the act of

March 30, 1871, except such information as may be contained in the report made to the legislature March 30, 1874, by the joint committee to investigate the sinking fund, in which a deficiency of $15,939.89 of bonds and of $1325.45 of interest is stated." Another report of said auditor was offered in evidence by the defendant, in which he stated as follows: "I have the honor to report that no counterfeit or forged obligations, bonds, coupons, or certificates of the State of Virginia have in any way come to my knowledge." The defendant then offered to prove by the testimony of an expert witness that the coupons issued were genuine coupons, but the court refused to receive such testimony or to allow it to go to the jury because of the act of the General Assembly approved January 21, 1886; to which ruling the defendant excepted on the ground that said act was repugnant to the Constitution of the United States. The defendant then rested, and thereupon the Commonwealth demanded of the defendant the production of the bond from which the coupons tendered purported to have been cut, with proof that said coupons were actually cut therefrom. The defendant moved the court to overrule and disallow such demand, on the ground that the act of assembly approved January 26, 1886, under which the demand was made, was repugnant to the Constitution of the United States and void. But the court overruled said motion and sustained the demand, to which the defendant excepted. The evidence being closed, the defendant prayed the court to instruct the jury that the production of the bonds from which the coupons in issue were cut, together with proof that the coupons were cut therefrom, was not necessary to establish the genuineness of the coupons, and that the act requiring this to be done is contrary to the Constitution of the United States. But the court refused this instruction, and instructed the jury that such production of bonds and proof, when demanded, was necessary to establish the genuineness of the coupons, to which ruling the defendant excepted. The defendant further prayed the court to instruct the jury that if the jury believe from the evidence that the State of Virginia issued her bonds with tax-receivable interest coupons thereto attached, which coupons

were made payable to bearer, and were printed from engraved plates and not signed manually by any officer of the State, and if they further believe that the defendant purchased the coupons filed with his plea of tender in open market, in good faith, as genuine coupons of said State, then the burden is upon the State to prove said coupons spurious, and that the act of March 12, 1887, placing upon the defendant the burden of proving them genuine is repugnant to the Constitution of the United States. This instruction was also refused by the court and the defendant excepted. The judgment in the case was removed by writ of error to the Supreme Court of Appeals of the State of Virginia, and was affirmed. The present writ of error brings this judgment before us for consideration.

*Mr. Daniel H. Chamberlain* and *Mr. William L. Royall* for plaintiffs in error.

*Mr. R. A. Ayers*, Attorney General of the State of Virginia, and *Mr. J. Randolph Tucker* for defendant in error.

The obligation to receive coupons extends only to genuine coupons. The taxpayer who has tendered coupons is bound to keep that tender good, and plead the fact, and prove it when put in issue. The question here is, has the State so altered the remedy as to impair the obligation of the contract?

While it is true, generally, that all laws in force applicable to the case at the time and place of making a contract form part of it, *Walker v. Whitehead*, 16 Wall. 314, 317, it is equally true that a law which only alters the remedy, but leaves one substantially equivalent, does not impair the obligation. *Antoni v Greenhow*, 107 U. S. 769, 774, 775.

What remedy had the taxpayer before the passage of the act under examination? The State could summarily levy upon his property for the taxes when he was driven to an action of trespass. This court had decided that any levy by an officer after tender of genuine coupons and not accepted was illegal and made the officer a trespasser. The officer became a trespasser if he levied, and was liable to the State if he accepted

coupons which turned out to be spurious, against which she had a clear right to protect herself. These treasurers in the country were not experts, and she might well distrust their judgment in receiving all which were tendered. And when tendered and refused the taxpayer retained the coupons and brought trespass in the Circuit Court of the United States and recovered back in damages the tax paid by the levy. The State paying these judgments for her officers was without tax paid either in money or coupons: and the right of the State to these coupons so tendered and taken back had been denied, and none had ever been delivered by such taxpayers. It is obvious that in this state of things the same coupon might serve as a tender for many taxpayers in fraud of the rights of the State to have her taxes paid in money or in these coupons. To avoid all this — to compel the taxpayer to pay in coupons what he refused to pay in money, to verify the genuineness of the coupons tendered, and to forbear the *ex parte* procedure by levy — the statute of May 12, 1887, was passed. The constitutionality of this act was passed upon by this court in *In re Ayers*, 123 U. S. 443, 494.

The next question arises under the act of January 21, 1886, forbidding expert evidence to prove the genuineness of the coupons tendered. The right to have one's controversies determined by existing rules of evidence is not a vested right. These rules pertain to the remedies which the State provides for its citizens; and generally, in legal contemplation, they neither enter into and constitute a part of any contract nor can be regarded as being of the essence of any right which a party may seek to enforce.

Like other rules affecting the remedy, they are subject at all times to modification and control by the legislature.

These changes may lawfully be made applicable to existing causes of action. The whole subject is under the control of the legislature, which may prescribe such rules for the trial and determination, as well of existing as of future rights, as in its judgment will most completely subserve the ends of justice. As to what shall be evidence, and which party shall assume the burden of proof in civil cases, the authority of the legis-

lature is practically unrestricted so long as its regulations are impartial and uniform.

Whilst this is true, it is conceded that the legislature has no power to establish rules, which, under the pretence of regulating the presentation of evidence, go so far as altogether to preclude a party from exhibiting his rights. Cooley's Con. Lim. 457, 458; *Ogden* v. *Saunders*, 12 Wheat. 213, 249; *Webb* v. *Den*, 17 How. 576; *Delaplaine* v. *Cook*, 7 Wisconsin, 44; *Kendall* v. *Kingston*, 5 Mass. 524; *Himmelman* v. *Carpentier*, 47 California, 42; *Rich* v. *Flanders*, 39 N. H. 304.

Tested by these principles, is the act under examination unconstitutional? Whatever may be alleged to the contrary, it clearly appears from the act that it prescribes a *general* rule of evidence, applicable alike to all cases investigated in the courts of the State, without reference as to who are the parties or what the subject matter of the controversy is. In applying it to the coupons of the State we must bear in mind that the coupons attached to bonds are not signed manually, but printed from engraved plates, capable of indefinitely multiplying the issue. The bonds are signed by the proper officer of the State, and are easily susceptible of proof as to their genuineness; but the coupons are not signed. Every coupon must, therefore, be the same, whether clipped from a bond which has actually been signed and issued, or from one which has not been signed or issued. It is manifest, therefore, that no expert testimony should be admitted in the trial of an issue as to the genuineness of a coupon, for the reason that it is impossible for him to say, in any given case, that the bond from which the coupon was clipped was ever executed and issued. The common rule, universally recognized, is that the best evidence which the nature of the case is susceptible of shall be adduced. The statute is only declaratory of this rule. This statute was under examination in a previous case by the Supreme Court of Appeals of Virginia. *Commonwealth* v. *Weller & Sons*, 82 Virginia, 623.

As to the objection against requiring the bond to be produced they are signed manually by the second auditor and treasurer of the State, and are easily susceptible of proof.

When produced, the certainty of the issue of the coupon is established, and by comparison of the coupons remaining upon the bond, an easy mode of identification is secured which is in strict compliance with the rules of the common law as interpreted by this court.

It is argued strenuously that the State, in issuing the bonds, contracted with the creditor that the taxpayer should not be required to produce the bond, and that the coupon might be proven by any other evidence which was available. When the funding act was passed, the rules of the common law were in force in Virginia, and one of its fundamental rules, as before stated, is, that the best evidence must be adduced. It is idle to say what the creditor supposed the State would do. The contract was made with reference to what she might lawfully do; and the fact that they did not consider the consequences which would result from exercise of the power reserved to require the production of the bond as the best evidence of its genuineness and the consequent genuineness of the coupon clipped from it, does not affect the lawful exercise of that power.

MR. JUSTICE BRADLEY, continuing, delivered the opinion of the court in these cases.

The question is presented to us whether the acts of assembly of the State of Virginia which required the production of the bond in order to establish the genuineness of the coupons and prohibiting expert testimony to prove the said coupons, are or are not repugnant to the Constitution of the United States. On this subject we think there can be little doubt. It is well settled by the adjudications of this court, that the obligation of a contract is impaired, in the sense of the Constitution, by any act which prevents its enforcement, or which materially abridges the remedy for enforcing it, which existed at the time it was contracted, and does not supply an alternative remedy equally adequate and efficacious. *Bronson* v. *Kinzie*, 1 How. 311; *Woodruff* v. *Trapnall*, 10 How. 190; *Furman* v. *Nichol*, 8 Wall. 44; *Walker* v. *Whitehead*, 16 Wall.

314; *Von Hoffman* v. *Quincy*, 4 Wall. 535; *Tennessee* v. *Sneed*, 96 U. S. 69; *Memphis* v. *United States*, 97 U. S. 293; *Memphis* v. *Brown*, 97 U. S. 300; *Howard* v. *Bugbee*, 24 How. 461.

We have no hesitation in saying that the duty imposed upon the taxpayer of producing the bond from which the coupons tendered by him were cut, at the time of offering the same in evidence in court, was an unreasonable condition, in many cases impossible to be performed. If enforced it would have the effect of rendering valueless all coupons which have been separated from the bonds to which they were attached, and have been sold in the open market. It would deprive them of their negotiable character. It would make them fixed appendages to the bond itself. It would be directly contrary to the meaning and intent of the act of 1871 and the corresponding act of 1879. It would be so onerous and impracticable as not only to affect, but virtually destroy, the value of the instruments in the hands of the holder who had purchased them. We think that the requirement was unconstitutional.

We also think that the prohibition of expert testimony in establishing the genuineness of coupons was in like manner unconstitutional. In the case of coupons made by impressions from metallic plates, (as these were,) no other mode of proving their genuineness is practicable; and that mode of proof is as satisfactory as the proof of handwriting by a witness acquainted with the writing of the party whose signature it purports to be. One who is expert in the inspection and examination of bank notes, engraved bonds and other instruments of that character, is able to detect almost at a glance whether an instrument is genuine or spurious, provided he has an acquaintance with the class of instruments to which his attention is directed. It is the kind of evidence resorted to in proving the genuineness of bank notes; it is the kind of evidence naturally resorted to to prove the genuineness of coupons and other instruments of that character. To prohibit it is to take from the holder of such instruments the only feasible means he has in his power to establish their validity.

In addition to these objections to the proceedings, we question very much whether the act of May 12, 1887, which authorizes and requires a suit to be brought against the taxpayer who tenders payment in coupons, as well as the other acts which require their rejection, are not themselves laws impairing the obligation of the contract. They make no discrimination between genuine and spurious coupons. A bank which should refuse to receive its bills in payment of a note due from one of its customers, but should sue him on his note, and leave him to establish the genuineness of the bills by suit against the bank, would not be regarded with much favor in a business community. It is the duty of its cashier or receiving teller to judge of the genuineness of the bills offered, and to refuse them as spurious on his peril, or rather, on the peril of the bank itself. So, in regard to these coupons, instead of relegating the taxpayer to a course of litigation, the officers of the State charged with the duty of collecting the taxes should themselves decide on the genuineness of the coupons offered. Penalties for knowingly offering spurious coupons, or using them in any way, for sale or otherwise, would probably be as effective in preventing their circulation as like penalties are in suppressing counterfeit bank bills, and other negotiable instruments.

In the case of *Bryan* v. *The State of Virginia*, the coupons that were tendered for the payment of the tax sued for purported to have been cut from bonds issued under the act of March 30, 1871, and the same obstacles to the proof of their genuineness were interposed as in the case of McGahey, by requiring the production of the bonds from which the coupons were cut, and by excluding expert testimony. The same also is true of the proceedings in the case of *Cooper* v. *The State of Virginia*.

We are of opinion, therefore, that

*The judgments in these three cases must be reversed, and the records severally remanded, for the purpose of such proceedings as may be required in due course of law, according to this opinion.*