## CITY OF INDIANAPOLIS ET AL. *v.* ROBISON.

[No. 23,243. Filed December 7, 1917.]

1. CONSTITUTIONAL LAW.—*Impairing Obligation of Contract.— Change of Law Embodied in Contract.*—Any change of the law embodied in a contract, such as a street improvement bond, which will substantially postpone, obstruct or retard its enforcement, or lessen its value, whether the change relates to its validity, construction, duration or discharge, impairs its obligation in violation of §10, Art. 1, of the Constitution of the United States, and by §24, Art. 1, of the Constitution of Indiana, and it is immaterial whether the change of law resulting in the impairment of the contractual obligation acts on the remedy or directly on the contract. p. 664.

2. CONSTITUTIONAL LAW.—*Street Improvement Bonds.*—*Impairing Obligation of Contracts.*—Where improvement bonds were issued under §§8718, 8719 Burns 1914, Acts 1905 p. 236, and §8720 Burns 1914, Acts 1907 p. 550, providing for the payment of assessments for street improvements in installments, the issuance of improvement bonds, the payment of which should be secured by a lien on the real estate assessed, that the city treasurer should receive all money paid on installments and pay the same to the bondholders and that "he should not use the money received by him in payments of such installments for any other purpose whatever than that of paying the bonds and coupons," the bondholder had his contractual rights fixed by such statute, so that the act of 1915, Acts 1915 p. 549, amending §8718 Burns 1914, and providing that prepayments of assessments must be credited to a "special fund" to be held in trust for the owners of bonds until the city can "invest such trust funds in bonds similar in kind and character, at par, for the benefit of said city as trustee for the holders of the bonds and interest coupons upon which such prepayments were made," and that the city should become liable for the amount of such prepayments, is invalid, as applied to bonds issued under the former acts, as impairing the obligation of the city's contract with the bondholders in violation of §10, Art. 1, of the Constitution of the United States and §24, Art. 1, of the Constitution of Indiana, since the amendatory act added substantial additional terms, risks and delay in the settlement of such contract not contemplated when it was originally executed. p. 665.

3. INJUNCTION.—*Grounds.*—*Apprehended Injury.*—Courts will not grant an injunction where it appears that the injury is merely apprehended but without facts showing that it is likely to occur. p. 669.

4. INJUNCTION.—*Grounds.*—*Actual Injury.*—*Threatened Injury.*—Where it appeared that a city was about to divert and use money held by its treasurer in trust for holders of improvement bonds in the purchase of bonds similar in kind and character, in violation of the bondholder's contract, and the treasurer had been ordered to draw a warrant in payment therefor, and some portion of the debt evidenced by the original issue of the bonds would be lost because of the fluctuation in the value of the bonds to be purchased with the trust funds, injunction will issue in behalf of the holders of the improvement bonds, as the injury threatened was not contingent, but real, and, it appearing that it was the settled policy to divert and invest such special fund, which was derived from the prepayment of assessments for street improvements, the bondholders were not

required to wait until a prepayment was actually made before bringing suit to enjoin its reinvestment. p. 669.

5. MUNICIPAL CORPORATIONS.—*Contracts in Excess of Authority.* —*Injunction.*—The execution of a contract by a city in excess of its authority may be enjoined. p. 671.

6. MUNICIPAL CORPORATIONS.—*Unauthorized Issue of Bonds.*— *Injunction.*—The issue of corporate bonds by municipalities without authority may be enjoined. p. 671.

7. MUNICIPAL CORPORATIONS.—*Unauthorized Expenditure of Funds.*—*Injunction.*—An injunction suit may be maintained by a taxpayer to prevent the unauthorized expenditure of corporate funds by the officers of a municipality. p. 671.

From Marion Circuit Court (25,390); *Louis B. Ewbank,* Judge.

Action by Bruce P. Robison against the City of Indianapolis and others. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*William A. Pickens,* for appellants.

*Merrill Moores* and *Howard W. Adams,* for appellee.

MYERS, J.—Appellee in 1909 became, and is now the owner of certain street improvement bonds issued in 1908, in anticipation of the collection of assessments on account of the improvement of a certain street in the city of Indianapolis, under an act approved March 6, 1905 (Acts 1905 p. 219, 286, §8710 *et seq.* Burns 1914), and as such bondholder brought this suit against the city of Indianapolis, the city controller and the city treasurer, on behalf of himself and all others similarly situated, to enjoin the defendants from purchasing bonds aggregating $2,495.04, under the alleged authority of the amendatory act of 1915. Acts 1915 p. 549.

The complaint was challenged by a demurrer for want of facts which was overruled. Trial was had by the court, with decision and judgment in favor of appellee, enjoining appellants from making the proposed purchase. Appellants' motion for a new trial was overruled, and this ruling, as well as the ruling on the de-

murrer to the complaint are each assigned as error in this court. Each of these assignments challenge the constitutionality of that part of the act of 1915, purporting to authorize the city, through its comptroller, to invest prepaid assessments in bonds similar in kind and character, at par, for the benefit of said city as trustee for the holders of the bonds and interest coupons upon which prepayments were made.

Appellee, as we understand, took the position in the court below, which was sustained, that his contract, as evidenced by his street improvement bonds issued by the city of Indianapolis, was impaired by the provisions of the act to which we have referred.

Appellants earnestly insist: (1) That by the amendatory act appellee's contract is not impaired, but by it he is given additional security, in that the city is made liable *in personam*; (2) that by the complaint, as well as from the evidence it appears that the threatened injury, if any, to appellee is wholly contingent, and that an injunction will never be granted where the alleged injury depends upon contingencies that may never arise.

It is settled in this State, and so conceded by appellants that: "The law, under which the contract was executed, is to be and remain the only rule by which the contract shall be construed. The obligations shall not be increased, nor the rights diminished, by any act of future legislation." *Lewis* v. *Brackenridge* (1822), 1 Blackf. 220, 221, 12 Am. Dec. 228; *Bryson* v. *McCreary* (1885), 102 Ind. 1, 1 N. E. 55; *Davis* v. *Rupe* (1888), 114 Ind. 588, 591, 17 N. E. 163; *Von Hoffman* v. *City of Quincy* (1866), 4 Wall. 535, 18 L. Ed. 403; *Seibert* v. *Lewis* (1886), 122 U. S. 284, 7 Sup. Ct. 1190, 30 L. Ed. 1161; *Harrison* v. *Remington Paper Co.* (1905), 140 Fed. 385, 72 C. C. A. 405, 3 L. R. A. (N. S.) 954, 5 Ann. Cas. 314.

A fair statement of the rule applicable to this class of

cases as established by the authorities, is that any change of the law embodied in the contract, as

1. here, which will substantially postpone, obstruct or retard its enforcement, or lessen its value, whether the change relates to its validity, construction, duration or discharge, impairs its obligation. And. it is immaterial whether it is done by acting on the remedy, or directly on the contract itself. In either case such legislation is inhibited by §10, Art. 1, of the Constitution of the United States, and by §24, Art. 1, of the Constitution of this State. *McCracken* v. *Hayward* (1844), 2 How. 608, 11 L. Ed. 397; 6 R. C. L. 328, 329; *City of Cleveland, Tenn.* v. *United States* (1909), 166 Fed. 677, 93 C. C. A. 274; *Harrison* v. *Remington Paper Co., supra.* In *Louisiana* v. *New Orleans* (1880), 102 U. S. 203, 206, 26 L. Ed. 132, it is said: "The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced—by which the parties can be obliged to perform it. Whatever legislation lessens the efficacy of these means impairs the obligation." In *Seibert* v. *Lewis, supra,* the court had under consideration an act of the legislature of Missouri repealing a statute in force when certain county bonds were issued, by substituting a less effective remedy than that given by the repealed law. The new law was held to be in violation of the constitutional prohibition against the impairment of the obligation of contracts, and in the course of the opinion the court said: "It is well settled by the decisions of this court that 'the remedy subsisting in a state, when and where the contract is made and is to be performed, is a part of its obligation, and any subsequent law of the state which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the Constitution, and is therefore void.' *Edwards* v. *Kearzey*, 96 U. S. 597, 607."

When appellee became the owner of the bonds and coupons, the act of 1905, *supra,* save as amended by the act of 1907 (Acts 1907 p. 550), was in force.

2. That law, §113, gave to persons whose property was assessed to pay for street improvements the right to pay such assessments by installments on signing and filing an agreement waiving any illegality or irregularity in the proceedings fixing the lien of the assessments, and the further right, after the expiration of the first year, of paying their entire assessment, and be relieved of the lien. By §114 it was made the duty of the treasurer to receive the money paid on account of each improvement, and the department of finance was required to keep a separate account of the fund arising from each particular improvement, and not allow the same to be diverted to the payment of any other improvement whatever. "The proceeds shall in each case constitute a separate special fund for the payment of contractors for the particular work upon the allowance of estimates by the board of public works or for the security and payment of street improvement bonds, if any are issued, as hereinafter provided for such street or alley." Under §115, "for the purpose of anticipating the collection of such assessments, the department of finance shall issue street or public improvement bonds, payable out of the funds actually paid to and collected by such city on such account, the proceeds of the same to be applied exclusively to payment for the improvements on the particular street or alley for the anticipation of the assessment for which the same are issued." These bonds were to be issued in series numbered from 1 to 10, no one bond to exceed $500. Another provision gave the contractor, or his assigns, at his option, upon demand, the right to have issued to him a bond, with coupons against each person's property. This section also provides that: "It shall

be the duty of the treasurer to promptly and properly apply all money paid in on such installments to the holders of the bonds and coupons, and he shall not use the money received by him in payments of such installments for any other purpose whatever than that of paying the bonds and coupons, and he shall promptly ascertain the amount paid in on such installments and without delay pay the same to the bond and coupon holders entitled thereto. In case any person shall exercise his right of prepayment of his assessment, as by law provided, and shall fully pay such assessment and interest, all interest and liability shall thereupon cease as to the property upon which the assessment so paid is levied. The liens against property shall be extinguished as rapidly as the treasurer shall collect funds, by reason of such prepayment and the funds so collected shall be applicable to the outstanding bonds and coupons in the order of their serial numbers, and interest thereon shall cease *pro tanto* from the time of such collection. It shall be the duty of the treasurer promptly to pay to the person presenting a bond or coupon such sum as may be applicable to the payment thereof, out of any prepayment or prepayments. It shall be the duty of the treasurer, in case prepayments are made, to notify the bond or coupon holders, in cases where such coupon or bond holders are known, or to give written notice to the person who presents such bonds or coupons, and where such bond or coupon holders are not known or such bonds or coupons are not presented, then to notify the contractor by whom the improvement was made."

In our opinion the legal rights of all the parties were fixed by the law as it stood when the bonds now held by appellee were issued. The obligation of the persons whose lands were assessed, and their privilege of making prepayments; the duty of the city treasurer to receive payments and to apply such payments on out-

standing bonds; the stopping of interest charges, whether the bonds were presented for payment or not; the duty of the department of finance to keep the proceeds arising from assessments for each particular improvement as a separate special fund for the payment of the bonds issued on account of that improvement, are all within the provisions of the statute, and the bondholder, whether contractor or his assignee, accepts such bonds charged with notice of all these provisions, and he is entitled to the remedies thus afforded for the payment of his bond.

Under these statutory provisions the city issues the bonds, but in doing so it incurs no liability for their payment as it would if the cost of the improvement were to be paid out of the general funds. *Town of Windfall City* v. *First Nat. Bank* (1909), 172 Ind. 679, 87 N. E. 984, 89 N. E. 311.

Appellee and those for whom he brings this suit hold ten per cent. installment bonds, with interest coupons attached. The payment of these bonds and coupons is secured by a lien on real estate. This lien can be removed only by the payment of the bonds, principal and interest, either before or at maturity, to the treasurer as trustee, whose duty it is, under the law, to immediately pay over any such prepayments to the bondholders entitled to the same. In short, that was the bondholders' contract. But by the amendatory act of 1915, *supra,* such prepayments, if any, properly to be applied on these bonds, must be credited to what is known as a "special fund" to be held in trust by the treasurer until the city, through its comptroller, can "invest such trust funds in bonds similar in kind and character, at par, for the benefit of said city as trustee for the holders of the bonds and interest coupons upon which such prepayments were made." It is also provided that "said bonds in which said trust funds are in-

vested, shall be held and collected by the treasurer as other bonds are collected, and the money applied in payment of the installment of interest and principal of the bonds upon which said prepayments were originally made, or to said city: Provided, That it has paid the same."

As we construe this amendment, the bondholder is not given any option in the matter. The prepayments constitute the "special fund" for investment by the city, and to be so handled by it as to expectedly meet the installments of interest and principal as the same become due on outstanding bonds. In handling this "special fund" the city acts in a trust capacity, and is not an insurer. It incurs only liability of a trustee, which is, that it will exercise sound discretion, as well as good faith and honest judgment in the purchase of the designated bonds. 39 Cyc 390. In this connection, the case of *Brooklyn Park Commissioners* v. *Armstrong* (1871), 45 N. Y. 234, 6 Am. Rep. 70, is in point. The reasoning in that case is strongly supportive of appellee's theory here. In that case the court had under consideration the validity of an act of the New York legislature directing that certain land theretofore condemned by the city of Brooklyn for park purposes under legislative authority be sold, and the money received therefor paid into a sinking fund of the city, to be held for the redemption of the bonds, which the city of Brooklyn had issued, pledging the land for their payment. In the course of the opinion it is said: "The holder of the bond did not agree to take a security upon a fund in the city treasury, and incur any risk of its preservation, but stipulated for a specific lien upon this land. * * * It was on the assurance that this should remain, that the creditor was induced to take the bonds, and give in exchange his property. This was a contract. The security cannot now be taken away without impairing the

obligation of that contract. (*Curran* v. *Arkansas,* 15 How. U. S. 304-314; *McGee* v. *Mathis,* 4 Wallace, 143; *Wabash, &c. Co.* v. *Beers,* 2 *Black,* 448.)"

So in the case at bar when appellees and others for whom he sues purchased the bonds they obtained a contract not secured by a fund in the city treasury, or to be invested by the city as a trustee, but a contract which gave them a lien upon lots or parcels of land, or the return to them of their money when paid in, be that at or before maturity of their bonds. Upon a careful consideration of the issues and evidence before us, we are convinced that the act of 1915, *supra,* added substantial, additional terms, risks and delay in settlement of the contracts not contemplated when they were originally executed. Clearly, then, this amendatory act, as applied to the contracts now in suit as well as all others of like kind and character executed prior to the time it became a law, was in violation of §10, Art. 1, of the Constitution of the United States, and of §24, Art. 1, of the Constitution of Indiana.

In view of our conclusion on the question considered, it will not be profitable to consider the effect of the amendatory act on §§114 and 115 of the act of 1905, *supra.*

But it is said that an injunction should not be granted for the reason that the apprehended injury is contingent. This claim is not supported by the complaint, nor by the record. True, courts will not grant an injunction where it appears the injury is merely apprehended but without facts showing that it is likely to occur.

In the present case appellee brings this suit on behalf of himself and all others similarly situated owning street improvement bonds and coupons issued by the city of Indianapolis. Briefly, it is shown that said city, through its comptroller, is about

to and will, unless enjoined, divert and use money now held by its treasurer in trust for these bondholders, which of right should be paid to them, in the purchase of bonds similar in kind and character, at par, for the benefit of such city as trustee for these holders of bonds and coupons, in violation of such bondholders' contracts; that such threatened action on the part of said city is being taken and justified under a legislative enactment inhibited by the federal Constitution and the Constitution of this State. It is shown that bonds of the character mentioned, to the amount of $2,495.04, have been purchased, and that the treasurer of the city has been ordered to draw a warrant in payment thereof on the special fund in his hands from prepaid assessments; that with the money from prepaid assessments in the hands of the treasurer, such bondholders will be protected, but if used as proposed, some portion of the debt evidenced by the bonds will be lost, for such comptroller must, necessarily, buy entire issues of bonds, and such issues not maturing at the time of the maturity of the bonds prepaid, it will be necessary, in order to meet such maturities, that the city sell bonds thus purchased at a discount, for it appears that such bonds fluctuate in value as shown by sales made during the year 1916, ranging from ninety-one to as high as one hundred and three.

Without taking space for a further statement of the record, we believe from this narration that the inference may be readily drawn that the threatened injury was not contingent, but real. Whether or not appellee or those for whom he brings this suit are affected by the present purchase, can make no real difference, for it appears that the settled policy of the city and its officers is to divert and invest this special fund in violation of the contract entered into at the time these bondholders gave up their money for the bonds now held by

them. Having .decided that the law under which the city is acting in making these investments is void, as applied to the contracts now in question, and as appellee and those similarly situated are shown to be the owners of bonds subject to prepayment, it is not necessary, in order for them to maintain this action, that they wait until a prepayment is actually made before bringing a suit to enjoin its certain reinvestment by the city.

It has been held that the execution of a contract by a city in excess of its corporate authority may be

5.   enjoined. *City of Valparaiso* v. *Gardner* (1884), 97 Ind. 1, 49 Am. Rep. 416. The issue of corporate bonds by municipalities without authority

6.   may be enjoined. *Town of Winamac* v. *Huddleston* (1892), 132 Ind. 217, 31 N. E. 561. An injunction suit may be maintained by a taxpayer

7.   to prevent the unauthorized expenditure of corporate funds by the officers of a municipality.

*City of Richmond* v. *Davis* (1885), 103 Ind. 449, 3 N. E. 130; *Jordan* v. *City of Logansport* (1908), 171 Ind. 280, 86 N. E. 47. In *Davis* v. *Fasig* (1891), 128 Ind. 271, 276, 27 N. E. 726, 727, this court held that, "where an ordinance is void, any party whose interests are to be injuriously affected thereby may go into a court of equity and have its enforcement stayed by injunction."

In our opinion this is a case for injunctive relief, and the judgment is therefore affirmed.

NOTE.—Reported in 117 N. E. 861. See under (1, 2) 12 C. J. 1010, 1013; 8 Cyc 947; (4) 22 Cyc 884. Effect of recitals in municipal bonds, 51 Am. St. 835.