146 So. 414

HOWARD, City Clerk, v. STATE ex rel. McGARRY.

8 Div. 464.

Supreme Court of Alabama.
Jan. 26, 1933.

Rehearing Denied March 9, 1933.

W. H. Mitchell, of Florence, for appellant.

Bowers & Dixon, of Birmingham, for appellee.

W. H. Armbrecht, of Mobile, filed brief, amicus curiae in opposition to the judgment of the trial court.

Harry Seal, of Mobile, filed a brief in support of the judgment.

THOMAS, Justice.

This is a petition for mandamus to require S. B. Howard, as city clerk of the city of Florence, Ala., to accept as payment of paving assessment, improvement bonds of that municipality on the same project, at their face value, pursuant to an ordinance of the municipality passed in compliance with the act of the Legislature of date of September 30, 1932.

The Act of September 30, 1932, amending section 2216 of the Code, as amended by Act September 10, 1927, pages 753, 769, § 45, contains, among others, the following provision: "In all cases where the property owner does not elect to pay installments, or having elected to pay in installments, fails to pay the first installment in thirty days from the date of assessment, he shall be held to have waived the right to pay in installments, and the entire assessment shall at the expiration of said thirty days become due and payable. Any city or town may, by appropriate ordinance, provide that any note or bond whether due or not, which has been issued by said municipality in connection with the financing of such improvement may be accepted by said municipality at its face value when tendered in payment of any such assessment, or assessments, or to redeem any property sold for such assessment, and said note or bond may be so accepted when tendered in accordance with the terms of such ordinance."

The ordinance adopted on the 8th day of October, 1932, pursuant to such legislative authority, reads as follows:

"1. Be it ordained by the board of commissioners of the city of Florence, Alabama, that the city clerk of said city be, and he is hereby authorized, empowered and instructed to accept in full payment, or as a partial settlement, in lieu of cash, upon any municipal improvement assessment due the city of Florence, matured improvement bonds and interest coupons at their full face value; it being understood that such bonds and coupons were issued by the city of Florence in that series of bonds based on the assessments sought to be paid. And upon receipt of such bond, or bonds, or coupons, the city clerk is authorized, empowered and instructed to credit upon such assessment the full amount of the face value of the said bonds and coupons so tendered.

"2. Be it further ordained by the board of commissioners of the city of Florence, Alabama, that the city clerk of said city be, and he is hereby authorized, empowered and instructed to accept in full payment, or as partial settlement; in lieu of cash, upon any municipal improvement assessment due the city of Florence, improvement bonds at their full face value, whether matured or unmatured; it being understood that such bonds were issued by the city of Florence in that series of bonds based on the assessment sought to be paid. And upon receipt of such bond, or bonds, the city clerk is authorized, empowered and instructed to credit upon such assessment the full amount of the face value of the said bonds so tendered."

The restriction in the act of the Legislature is that the bonds tendered in payment, or part payment, must have been issued for the improvement covered by the given assessment, and the ordinance adopted by the city contained a like limitation of such right of tender and payment by the taxpayer and bondholder.

The petition for mandamus shows that the owner (petitioner) whose lot was assessed for municipal street improvements, tendered in payment of such assessment, a *matured* and an *unmatured* paving assessment bond to the city clerk for credit on the assessment against his lot, the bonds so tendered were each against the improvement for which the assessments were made, and so tendered by the owner in satisfaction of the assessment and lien against his said property so improved and assessed.

It is further averred that said city clerk, so empowered, authorized, and instructed to receive the bonds in payment, etc., declined to accept the bonds so tendered, and declined to give the owner and payer of the assessment the required credits; that there are many like bonds outstanding against the same paving improvement or project.

The clerk demurred to the petition, setting up the invalidity of the ordinance of the city, and that of the provisions of the Act of September 30, 1932, set out above. The clerk filed his answer admitting the allegations of the petition. The judgment of the circuit court awarded the writ.

The insistence is made that, if such payment by and with the matured and unmatured bonds was invalid, the city clerk would be liable for such act in accepting payment otherwise than in money, and that his official bond would be liable therefor.

The city had the right under the municipal code to pledge the proceeds of any proposed assessments under the bond section (section 2223, Code, as amended by Acts 1927, p. 771, § 52); to pay for the work by bond (section 2224, Code, as amended by Acts 1927, p. 772,

§ 53); and to receive bonds issued for the work after maturity for taxes and dues. Code 1928, § 2294 (20), Acts 1927, p. 639. These statutes were amended in 1921 (Acts Sp. Sess. 1921, p. 71, § 1), section 1401, Code 1907, in 1923 (Acts 1923, p. 13, § 1), section 2216, Code 1923; and in 1927 the amendment broadened the powers of the assessing authorities as follows: "At any time when the amount of any particular fund shall, with its accumulations, equal the amount of any one of the outstanding bonds and accrued interest entitled to payment out of such fund, the governing body of such municipality shall have authority to redeem any and all such bonds that may be presented for redemption at such times thereafter as the holders thereof may desire to present the same for redemption." Section 2294 (47), Code 1928.

And amendatory is that of 1932, containing the provision under which the city of Florence adopted its ordinance and under which the payment in question was sought to be made by giving the statute retroactive effect to bonds issued on June 1, 1923. In a sense the statute was remedial (Miller-Brent Lumber Co. v. State et al., 210 Ala. 30, 97 So. 97; Lehmann v. State Board of Public Accountancy et al., 208 Ala. 185, 94 So. 94; Folsom v. Carnley, 210 Ala. 131, 97 So. 95; Barrington's Case, 200 Ala. 315, 76 So. 81; Globe Indemnity Co. v. Martin, 214 Ala. 646, 108 So. 761), and, as such, had it a retroactive effect as to the issuance of bonds that may be received as payment? (Board of Revenue of Jefferson County v. Hewitt, 206 Ala. 405, 90 So. 781). It may be conceded that the act was passed to remedy, as it may, the hard financial conditions of the times throughout the state. Hodge v. Joy, 207 Ala. 198, 201 (2), 92 So. 171. Under the act, stated generally, the city may accept or reject by ordinance, its beneficent provisions in accordance with its official judgment and financial requirements. The city of Florence accepted such provisions by the mandatory ordinances instructing its official to accept bonds, whether matured or unmatured, upon that improvement, if offered to be so paid by the owners of lots subject to that improvement assessment and lien. The petitioner held such matured and unmatured bonds, owed assessments on his lots, and as such bondholder conceived it of benefit to himself to pay and discharge his obligation to the city on that work and project, by tendering its bonds on the work in discharge of his duty of payment to the city for the assessments against him.

What of the rights of the bondholder who does not participate in the exchange of like evidences of the city's indebtedness? Town of Capitol Heights v. Steiner, 211 Ala. 640, 101 So. 451, 38 A. L. R. 1264. Is he injured or benefited thereby in the sense that he is protected by the Constitution? It is insisted by appellee that his primary security is more valuable, or is strengthened by reason of the

city's enhanced credit; or for that its assets and limited liabilities are affected in like degree. Are answers to be found (1) in the fact that the satisfied obligations of the city, of the taxpayer, and of the bondholder, all make for a net gain, and improve the moral, financial, and legal conditions as affecting the city and property of its citizens that otherwise might be sacrificed by reason of foreclosure and sales for such assessments, and in the fact that private property will be saved to its owner; (2) in that the redemption of such property already lost to the citizen may be reclaimed by the owner, and, thereafter, bear its proportionate share of the burden of taxation by the state, county, and city; and (3) from this remedial legislation and exercise of the rights thereunder, will come the strengthening of municipal credit and enhancing of the value of securities on the very project held by the nonparticipating bondholder?

The fact must not be overlooked that the statute of 1932 and the ordinance for exchange of bonds for assessments *only apply to the same improvements and assessments for which the securities and bonds were issued.* So limited, is there an impairment of contract obligations of other bondholders, within the interdiction of the Constitutions? To this end we will now examine the authorities, state and federal.

The doctrine of set-off, at law and in equity, as applied to private contracts (where the rights of third parties were not affected), was approved by the Supreme Court of the United States (Blount v. Windley, 95 U. S. 173, 24 L. Ed. 424), and the mode of doing this declared to be the province of legislative control (Henry Amy et al. v. Taxing District of Shelby County (Tenn.) 114 U. S. 387, 5 S. Ct. 895, 898, 29 L. Ed. 172; Scott v. Armstrong, Receiver, etc., 146 U. S. 499, 13 S. Ct. 148, 36 L. Ed. 1062; State ex rel. Gunter v. Thompson, 193 Ala. 561, 564, 69 So. 461; City of Ensley v. Simpson, 166 Ala. 366, 377, 52 So. 61).

From private contracts the United States Supreme Court approaches public contracts, in the case of Henry Amy et al. v. Taxing District, etc., supra. The Legislature of Tennessee in substance authorized the exchange, upon a reorganization of a taxing district, of *old bonds* in payment of *back taxes.* This is the authority for our exchange statute, section 2294 (20), Code 1928. Mr. Justice Miller for that court said:

"The legal and equitable right in a general way, of a debtor to procure the obligations of his creditor and use them as a set-off for his own debt, will hardly be denied when the law of the state authorizes it, and such a law can be liable to no impeachment as divesting vested rights or impairing the obligation of contracts. Blount v. Windley, 95 U. S. 173 [24 L. Ed. 424]. Both the origi-

nal act, (chapter 92,) and the two acts of 1883, did this. The fact that the latter acts made a change in the rate at which this set-off should be allowed did no injustice to plaintiffs, but rather favored them, since it permitted their debt with its accumulated interest to be set off dollar for dollar, whereas this could only be done before at two dollars for one. It did them no injustice, and violated no right of theirs, nor any contract of theirs, that the new bonds exchanged for old indebtedness should be receivable for back taxes at the same rate that the old indebtedness would have been received if no exchange had been made.

"We see no vested right of plaintiffs which is violated by the decree, no contract of theirs impaired by the legislation complained of, and no injustice done them, and especially none which this court can remedy."

For the stated reason, the plaintiffs in error "held and still hold debts against the city of Memphis, which were not secured by a lien or claim on any tax specially assessed for their payment. Their debts belonged to the unpreferred class," and "the special taxes assessed * * * could only be paid in money; and as fast as it was paid it was appropriated to the payment of the debts for which it was specifically assessed. And so also of all taxes assessed for any special purpose." This does not justify the giving of a retrospective effect to our statute as amended and as affecting this special assessment and its lien.

In line with this decision is the important decision in Oshkosh Waterworks Company v. City of Oshkosh, 187 U. S. 437, 23 S. Ct. 234, 47 L. Ed. 249, where the question in the United States Supreme Court was whether a state had the right to alter the *mode of procedure* against a municipality as affecting the disallowance of municipal claims. The court said: "It is well settled that while, in a general sense, the laws in force at the time a contract is made enter into its obligation, parties have no vested right in the particular remedies or modes of procedure then existing. It is true the Legislature may not withdraw all remedies, and thus, in effect, destroy the contract; nor may it impose such new restrictions or conditions as would materially delay or embarrass the enforcement of rights under the contract according to the usual course of justice as established when the contract was made. Neither could be done without impairing the obligation of the contract. But it is equally well settled that the Legislature may modify or change existing remedies, or prescribe new modes of procedure, without impairing the obligation of contracts, provided a substantial or efficacious remedy remains or is given, by means of which a party can enforce his rights under the contract. Green v. Biddle,

8 Wheat. 1, 85, 5 L. Ed. 547, 568; Bronson v. Kinzie, 1 How. 311, 317, 11 L. Ed. 143, 145; Planter's Bank v. Sharp, 6 How. 301, 327, 12 L. Ed. 447, 458; Walker v. Whitehead, 16 Wall. 314, 317, 21 L. Ed. 357; Murray v. Charleston, 96 U. S. 432, 433, 24 L. Ed. 760; Edwards v. Kearzey, 96 U. S. 595, 601, 24 L. Ed. 793, 796; Vance v. Vance, 108 U. S. 514, 518, 27 L. Ed. 808, 810, 2 S. Ct. 854; McGahey v. Virginia, 135 U. S. 685, 693, 34 L. Ed. 312, 314, 10 S. Ct. 972; Barnitz v. Beverly, 163 U. S. 118, 41 L. Ed. 93, 16 S. Ct. 1042; McCullough v. Virginia, 172 U. S. 102, 104, 43 L. Ed. 382, 383, 19 S. Ct. 134. The decisions of the Supreme Court of Wisconsin as to what are to be deemed laws impairing the obligations of contracts are in harmony with the decisions of this court. Lightfoot v. Cole, 1 Wis. 26, 34; Von Baumbach v. Bade, 9 Wis. 559, 76 Am. Dec. 283; Paine v. Woodworth, 15 Wis. 298; Northwestern Mut. L. Ins. Co. v. Neeves, 46 Wis. 147, 49 N. W. 832; Lee v. Buckheit, 49 Wis. 54, 4 N. W. 1077; Rosenthal v. Wehe, 58 Wis. 621, 17 N. W. 318."

The holding was: "The obligation of contracts with a municipality is not impaired by subsequent changes in its charter, which protect it from suit upon claims against it which have not first been presented to the city council and wholly or partly disallowed, either by affirmative action or by the failure of that body for more than sixty days to pass thereon, and provide that disallowance is final and conclusive unless within twenty days an appeal therefrom be perfected to the proper circuit court, in which the case is to be tried as though originally commenced therein."

It may be conceded that these decisions and many others, including the United States Supreme Court case of an appeal from Alabama, Port of Mobile v. Watson, 116 U. S. 289, 6 S. Ct. 398, 29 L. Ed. 620, 626, opinion by Mr. Justice Woods, hold in substance that the Legislature cannot deprive a bondholder of *his remedy for collection*. The important announcement in the last cited case was (116 U. S. 289, 6 S. Ct. 398, 405, 29 L. Ed. 626): "Therefore the remedies for the enforcement of such obligations assumed by a municipal corporation, which existed when the contract was made, must be left unimpaired by the Legislature, or, if they are changed, a substantial equivalent must be provided. Where the resource for the payment of the bonds of a municipal corporation is the power of taxation existing when the bonds were issued, any law which withdraws or limits the taxing power, and leaves no adequate means for the payment of the bonds, is forbidden by the Constitution of the United States, and is null and void. * * * Von Hoffman v. Quincy, 4 Wall. [71 U. S.] 535 [18 L. Ed. 403]; Edwards v. Kearzey, 96 U. S. 595 [24 L. Ed. 793]; Ralls

County Court v. United States, 105 U. S. 733 [26 L. Ed. 1220]; Louisiana ex rel. Southern Bank v. Pilsbury, 105 U. S. 278 [26 L. Ed. 1090]; Louisiana v. Mayor of New Orleans, 109 U. S. 285, 3 S. Ct. 211 [27 L. Ed. 936]. These propositions receive strong support from the decisions of the Supreme Court of Alabama. Com'rs of Limestone County v. Rather, 48 Ala. 433; Edwards v. Williamson, 70 Ala. 145; Slaughter v. Mobile County, 73 Ala. 134."

The position of this court on the important question is set forth in City of Ensley et al. v. Simpson, 166 Ala. 366, 387, 388, 52 So. 61, 68, as follows: "Appellee is the holder and owner of a bond of the city of Ensley issued subsequent to the year 1901. We do not see that the allegation of this fact in the amendment of the bill added strength to complainant's position. It has been settled *that the remedies for the enforcement of obligations assumed by municipal corporations, which existed when the contract was made, cannot be impaired by the Legislature*, or, if they are changed, a substantial equivalent must be provided. 'Where the resource for the payment of the bonds of a municipal corporation is the power of taxation existing when the bonds were issued, any law which withdraws or limits the taxing power and leaves no adequate means for the payment of the bonds is forbidden by the Constitution of the United States and is null and void.' Mobile v. Watson, 116 U. S. 289, 6 S. Ct. 398, 29 L. Ed. 620, and authorities there cited. To the same effect are decisions of this court. Amy v. Selma, 77 Ala. 103; Slaughter v. Mobile County, 73 Ala. 134; Edwards v. Williamson, 70 Ala. 145; Commissioners of Limestone County v. Rather, 48 Ala. 433. There is no complaint of any impairment of complainant's security for his debt." (Italics supplied.)

The holding in that case was: "If it be conceded that the merger of a city, which had issued bonds under agreement to levy a tax to provide a sinking fund for the payment of the interest on the bond, into another city, *destroyed the security of the bond, on the ground that the general credit of the larger city was not a substantial equivalent for the security contracted for, yet, the legal obligation remained unimpaired and a remedy for the diversion of funds impairing the security can be had upon proper application*." (Italics supplied.) City of Ensley v. Simpson, 166 Ala. 367, headnote 14, 52 So. 61.

This decision was rested largely upon Von Hoffman v. City of Quincy, 4 Wall. 535–555, 18 L. Ed. 403, where the holding was:

"Laws requiring taxes to the requisite amount to be collected, to pay municipal bonds, which were in force when the bonds were issued, cannot be annulled by subsequent legislation.

"A subsequent Act restricting the power to tax, so far as it affects the bonds, is a nullity."

■ Thus we are brought to the consideration of the statutes in force when these bonds were issued, providing specifically that the assessments "shall be paid in cash." Section 1401, Code 1907, section 2216, Code of 1923, and with slight amendment appears in section 45 of the Act of 1927, Acts 1927, p. 769. The words "city council may provide" apply *not to payment in cash*, but to *the right given the property owner to pay in lump sum in cash or pay in cash the installment payments* afforded at the election or option of the owner, if the improvement is of that magnitude or class.

The statute is specific that payments all be made in cash whatever the time of payment.

However, such money payments would have been implied, if not so expressly provided in the act. Williams v. Costello, 95 Ala. 592, 11 So. 9. The owner of the property in a general sense is the debtor, the municipality the trustee (City of Mobile v. Smith, 223 Ala. 480, 136 So. 851), and the owner or rightful holder of the bond is the creditor. Had the statute been in force at the time of issue and sale of the bonds, it would be held that, reading the statute therein, there was an agreement to accept the payments other than in cash and in the manner stipulated by the statute, the ordinance, and the wording of the bond. There was no such agreement or implication to the effect that payments may be made by exchange in the manner indicated in the recent statute. See Burke v. Armstrong, 52 Ala. 48, 49, saying: "The only remedy the creditor has for its recovery is a presentation to, and a registration by the treasurer, and then compulsory process against the county commissioners, for the levy of a county tax, so far as they have power to make such a levy, to pay such claims as have been allowed and presented to and registered by the treasurer. Tarver v. Court of Commissioners, 17 Ala. 527; Falkner v. Commissioners' Court, 19 Ala. 177; Marshall County v. Jackson County, 36 Ala. 613. The rights of creditors thus intervening, it may well be doubted whether a legislative enactment could impair or defeat them. Certain it is, that they are beyond the control of the county officials. Dillon on Munic. Cor. § 41."

This was in response to an application for mandamus to compel the county treasurer to receive in payment of taxes, county warrants, or orders on the treasury. To like effect is the holding in Capital Grain & Feed Co. v. Federal Reserve Bank of Atlanta (D. C.) 3 F.(2d) 614, 616, involving the constitutionality of the Act of September 30, 1920 (Acts 1920, page 36), as affecting payments in drafts or checks. Farmers' & Merchants' Bank of Monroe, N. C., v. Federal Reserve Bank of Richmond, Va., 262 U. S. 649, 43 S. Ct. 651, 67 L. Ed. 1157, 30 A. L. R. 635, held the Alabama statute (Acts 1920, page 36) void in the effort to make a class of debts payable at the option of the debtor in something else than gold or silver coin. The act in force, section 1401 of the Code of 1907, provided for the payment of assessments in cash, and did not permit payment thereof in any other medium.

■■ The effect of retroactive application of the statute (not of force when the bonds were issued and sold), under the decree of the court authorizing the payment of assessments at the option of the debtor in *any other medium than cash*, would impair the obligation of such contract, and to such extent deprive the nonparticipating bondholders on that project of their property without due process of law. Such in effect is our decision, as we have indicated, in the case of City of Ensley v. Simpson, 166 Ala. 366, 52 So. 61; since it is settled by the decisions of the United States that the remedy subsisting in a state, when and where a contract is made and is to be performed, is a part of its obligation, and that remedy may not be substantially impaired and its value lessened without impairing the contract in such wise as is forbidden by the Constitution. Seibert v. United States ex rel. Lewis, Adm'r, etc., 122 U. S. 284, 7 S. Ct. 1190, 30 L. Ed. 1161; Graham, County Auditor, etc., v. Folsom, 200 U. S. 248, 26 S. Ct. 245, 50 L. Ed. 468; Barnitz v. Beverly, 163 U. S. 118, 16 S. Ct. 1042, 41 L. Ed. 93; State of Louisiana ex rel. Hubert v. Mayor & Council of City of New Orleans, 215 U. S. 170, 30 S. Ct. 40, 54 L. Ed. 144; State of Louisiana ex rel. Ranger v. City of New Orleans, 102 U. S. 203, 26 L. Ed. 132.

An interesting case on this subject is City of Indianapolis v. Robison, 186 Ind. 660, 117 N. E. 861, 863. Robison was the owner of street improvement bonds issued in 1908, in anticipation of the collection of assessments on account of the improvement of a certain street; the statute in effect at the time of the issuance of the bonds held by Robison provided that the proceeds of the assessments *should be kept in a special fund for the payment of contractors for the particular work covered by such improvement* and the improvement bonds issued in respect thereof. By a later statute enacted (Acts Ind. 1915, c. 129, p. 549), the treasurer was authorized to invest the proceeds arising from the collection of such assessments "in bonds similar in kind and character, at par, for the benefit of said city as trustee for the holders of the bonds and interest coupons upon which such prepayments were made," and further, "said bonds in which said trust funds are invested shall be held and collected by the treasurer as other bonds are collected, and the money

applied in payment of the installment of interest and principal of the bonds upon which said" assessments were originally made. Thus, the change made by the Indiana statute, after the Robison bonds were issued, was that instead of requiring the treasurer to keep the money so paid on the project and assessments and apply it to the payment of the improvement bonds, the treasurer was authorized to *invest the funds in other bonds of a similar character*, and hold such investment bonds in trust for the payment of the city's public improvement bonds. The change was not with respect to *the medium of payment (as we have indicated above)*, but only with respect to *how the trust funds should be applied* pending accrual of the bonded indebtedness. The court said (186 Ind. 660, 117 N. E. 861, 863): "In our opinion the legal rights of all the parties were fixed by the law as it stood when the bonds now held by appellee were issued. The obligation of the persons whose lands were assessed, and their privilege of making prepayment, the duty of the city treasurer to receive payments and to apply such payments on outstanding bonds, the stopping of interest charges, whether the bonds were presented for payment or not, and the duty of the department of finance to keep the proceeds arising from assessments for each particular improvement as a separate special fund for the payment of the bonds issued on account of that improvement are all within the provisions of the statute and the bondholder, whether contractor or his assignee, accepts such bonds charged with notice of all these provisions, and he is entitled to the remedies thus afforded for the payment of his bond."

This decision was largely rested upon the authority of Seibert v. United States ex rel. Lewis, Adm'r, etc., 122 U. S. 284, 7 S. Ct. 1190, 30 L. Ed. 1161. The Indiana court, however, quoted from the case of Brooklyn Park Commissioners v. Armstrong, 45 N. Y. 234, 6 Am. Rep. page 70, as follows (186 Ind. 660, 117 N. E. 861, 863): "'The holder of the bond did not agree to take *a security upon a fund in the city treasury, and incur any risk of its preservation*, but stipulated for a specific lien upon this land. * * * It was on the assurance that this should remain that the creditor was induced to take the bonds, and give in exchange his property. This was a contract. The security cannot now be taken away without impairing the obligation of that contract. Curran v. Arkansas, 15 How. U. S. 304, 314 (14 L. Ed. 705); McGee v. Mathis, 4 Wall, 143 (18 L. Ed. 314); Wabash, etc. Co. v. Beers, 2 Black. 448 (17 L. Ed. 327).'" (Italics supplied.)

The Supreme Court concludes its opinion on this point in the following language (186 Ind. 660, 117 N. E. 861, 864): "Clearly, then, this amendatory act, as applied to the contracts now in suit as well as all others of like kind and character executed prior to the time it became a law, was in violation of article 1, § 10, of the Constitution of the United States."

In the present case the lien of the bondholders (of date of June, 1923) is secured *by a lien upon the special assessments, the proceeds of which assessments are a trust fund for the pro rata benefit of all of the holders of these bonds, and not for the benefit of any holder of one particular bond.*" This difference is illustrated in Blount v. Windley, 95 U. S. 173, 179, 24 L. Ed. 424, wherein Mr. Justice Miller said: "In what we have here said, we do not mean to be understood that, where the creditors of the bank have a right to have such a debt *paid in lawful money*, the Legislature can deprive them of that right; nor that in any other case, where the judgment creditor represents *an interest in the contract, which has a right to demand its payment in lawful money, the State can authorize its payment in anything else.*" (Italics supplied.)

So far as the impairment of the obligation of contracts is concerned, there is *no substantial difference* between the principle involved in this case, and that of a case involving the constitutionality of an act adopted after the issuance of municipal bonds, which deprives the municipality of the power to levy an efficient tax which it was authorized to levy at the time the bonds were issued. The whole matter is disposed of by the Supreme Court of the United States in the case of Port of Mobile v. Watson, 116 U. S. 289, 62 S. Ct. 398, 29 L. Ed. 620, as we have indicated above, and on the authority of United States ex rel. Wolff v. Mayor & Administrators of the City of New Orleans, 103 U. S. 358, 26 L. Ed. 395, and County Court of Ralls County, etc., v. U. S. ex rel. Douglass, 105 U. S. 733, 26 L. Ed. 1220.

This court is committed to the same principle indicated by the language of Chief Justice Brickell in Burke v. Armstrong, 52 Ala. 48, to the effect that: "The rights of creditors thus intervening, it may well be doubted whether a legislative enactment could impair or defeat them."

■ If no bonds had been issued and the city and the property holders were the only ones interested, the statute would not be unconstitutional, *but as the bondholders' rights have intervened*, the Legislature has no *power to change the medium of payment as to such existing bonds;* and not having such right, cannot be held under the existing statute to have intended a retrospective effect that would render the act unconstitutional. Jefferson County v. John L. Busby, post, p. 293, 148 So. 411, and authorities cited.

When the improvements, in respect of which these bonds were issued, were com-

pleted, and the assessments made final against all of the benefited property, each holder of one of the 124 bonds issued to pay the cost of such improvements had vested in him a 1/124th interest in the liens given by the statute upon *each ·of the many pieces of property*, against which the assessments were levied. These lots or parcels of land were of different values; some were worth more than the amount assessed respectively against such property, and some were, or may have been, or may be at this time, worth less than the amount of the assessments against such parcels. The probability of collecting in full each assessment is dependent upon the total value of the property against which the assessment was made. The value of the security afforded the bondholders by reason of the assessment is, therefore, dependent upon the value of each lot or parcel of property, and upon the value of all the property taken as a whole. If every bondholder had a lien upon one piece of property, that is, if every bond was secured by an assessment against one parcel of property, the situation would have been different, and every bondholder would have been forced, in order to determine the value of his security, to ascertain the value of the particular piece of property covered by the assessment which stood as security for his particular bond. If that had been the case, the bondholder would have no right to object to the later enactment of a law which permitted his bond to be used in the payment of the assessment against the only piece of property on which he held a lien. Such is not the case. Each holder of one bond has a 1/124th vested interest in each, and all of the assessments, and that security cannot be impaired by any statute subsequently enacted impairing that lien.

It is, therefore, apparent that the amendment to section 2216 of the Code, added by the Act of September 30, 1932, does not afford a substantial equivalent to the provisions of section 2216 of the Code of 1923, or section 1401 of the Code of 1907, and, therefore, the amendatory Act of September 30, 1932, violates article 1, § 10, of the Constitution of the United States, and section 22 of the Alabama Constitution.

There was error in the ruling of the trial court in giving retroactive effect to the statute and ordinances, and in compelling acceptance by the city clerk of payments in bonds to which the 1932 statute could have no application.

The judgment of the lower court is in error in not sustaining demurrers to relator's petition and in awarding the writ of mandamus. That judgment is reversed, and one here rendered denying the petition for mandamus and the petition is dismissed.

Reversed and rendered.

ANDERSON, C. J., and GARDNER, BOULDIN, FOSTER, and KNIGHT, JJ., concur.

BROWN, J., concurs for reasons stated below.

BROWN, J. (concurring specially).

I am of opinion that the legislative intent, that the proviso constituting the amendment to section 2216 of the Code as amended by the act of 1927, should apply to assessments levied prior to the passage of the act of 1932, is clear. This appears not only from its language, but from the fact that it is embodied in the section of the Code under which said assessments were levied and the bonds issued. That section as it existed at the time of the levy is the law of the contracts protected by the Constitution against impairment by subsequent legislation. It is also manifest that this is, in a sense, emergency legislation to meet the stress of the times, to aid the property owner in discharging existing obligations. If the purpose of this amendment was to increase the salability of municipal bonds, it is founded on a misconception of the legal structure on which they are issued, and would diminish their sale value. To limit the Act to future transactions is to ignore the legislative intent and rewrite it by judicial decisions. This the court has no authority to do. State v. The Praetorians, post, p. 259, 146 So. 411, this day decided.

It is, therefore, my judgment that the act is unconstitutional in its entirety.